**STATE of Missouri, Plaintiff-Respondent,**

v.

**Robert Dean ANDERSON, Defendant-Appellant.**

**No. 13241.**

Missouri Court of Appeals, Southern District, Division One.

Dec. 27, 1983.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 16, 1984.

Application to Transfer Denied Feb. 15, 1984.

issues before us.

---

1. There are also provisions with respect to a key employee which have no bearing on the

John D. Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Margaret Elise Branyan, Asst. Public Defender, Springfield, for defendant-appellant.

TITUS, Judge.

As a persistent offender under § 558.-016–3 [1], defendant was charged with having committed first degree robbery under § 569.020–1(3) in that he "knowingly and forcibly stole" money in the possession of an employee of Guaranty Federal Savings & Loan Ass'n of Springfield (Guaranty) "and in the course thereof ... threatened the immediate use of a dangerous instrument against" said employee. A jury found defendant guilty and subsequent to a hearing on the persistent offender charge, the court found defendant to be such an offender and sentenced him to imprisonment for a term of 15 years. Defendant appealed.

█ In determining the sufficiency of the evidence to sustain a conviction, an appellate court is obligated to accept as true all direct and circumstantial evidence and all reasonable inferences flowing therefrom most favorable to the state and disregard evidence and inferences contrary thereto. The court's duty is not to weigh the evidence but to determine whether there was substantial evidence to support the verdict. Substantial evidence means evidence from which the jury could find the issues in harmony therewith. *State v. Sherrill,* 657 S.W.2d 731, 737[15, 16] (Mo. App.1983). With these principles in mind, we briefly recast the evidence.

Near 10:20 a.m., October 27, 1982, defendant entered Guaranty's building in downtown Springfield. He had "a trench coat of some type" draped over his right forearm. Defendant approached a teller and told her "Keep the money rolling ... Keep the money rolling, I want hundred dollar bills ... I have a bottle of gasoline and I'll drop it and blow us up." The teller told defendant she had only twenty dollar bills and defendant said he would take those. Defendant continued "mumbling something about gasoline and blowing me up, and I

---

1. References to statutes and rules are to V.A. M.S. and V.A.M.R.

just kept responding 'Yes, sir, Yes, sir, Yes, sir'" because "I was frightened, I was trying to obey his orders ... I was frightened but trying to remain calm, trying to think clearly." The teller obtained $1,600 in $20 bills from her drawer and gave them to defendant who took them in his left hand and departed. Other Guaranty employees were advised what had occurred as the robbed teller hit her "teller button" to notify the authorities of the robbery. A male employee at Guaranty followed defendant and saw him enter a "plasma center" before he was joined by several police officers. All waited until defendant left the center. When confronted by the officers, defendant "reached into his pocket, pulled out his hand, and threw a bunch of money on the ground." While being handcuffed following defendant's arrest, "a whiskey bottle fell out of his pant leg."

Defendant's first point relied on, written in utter disregard of the mandates of Rule 30.06(d), reads: "The trial court erred when it denied the defendant's application for a change of judge because the application was timely and fully complied with Missouri Supreme Court Rule 32.07(c) and (d) and therefore the court was without jurisdiction to proceed beyond transferring the cause to another judge." The point nowhere attempts to state "wherein and why" the application was timely and complied with the mandates of Rule 32.07. However, as this court, per Rule 30.09, did not afford defendant a second chance to do properly what he should have done in the first instance, we briefly consider the point on its merits, if any. *State v. Gamble,* 649 S.W.2d 573, 576 (Mo.App.1983).

The legal file in this cause reflects the docket was called in Division Three of the Circuit Court of Greene County on March 21, 1983, and on that date the case was set for trial the week of March 28, 1983, in that division. Thereafter on March 21, 22, 24 and 25, 1983, the following occurred: On March 21 the state filed an amended information alleging defendant was a persistent offender and a motion to shorten time and notice of hearing; on March 22 and 24 the state filed motions to endorse witnesses and

notices of hearings; on March 25 at a hearing on the aforementioned motions and the amended information, attended by counsel for the state and defendant, the court overruled defendant's objections, sustained the state's motions, including its motion to amend the information.

On Monday, March 28, 1983, the trial date, the parties and their counsel appeared. Some 15 minutes before the trial was to begin, defendant filed an application for a change of judge which was denied. Defendant as noted, supra, claims this was error.

Rule 32.07(c), upon which defendant relies provides: "In felony cases the application must be filed not later than thirty days after arraignment if the trial judge is designated at arraignment. If the trial judge is not designated at arraignment, the application must be filed no later than thirty days after the designation of the trial judge and notification to the parties or their attorneys. If the designation of the trial judge occurs less than thirty days before trial, the application must be filed prior to commencement of any proceeding on the record."

■ Assuming, but not deciding, that the trial judge, as defendant asserts, was not designated until March 21, 1983, at the docket call, we cannot agree with defendant's claim that as the judge was not designated at least 30 days before trial he had leave to demand and receive a change of judge at any time, even on the day of trial. What defendant overlooks and ignores is the last sentence of Rule 32.07(c), supra, particularly that part requiring the application to "be filed prior to commencement of any proceeding on the record" and the fact that a "proceeding on the record" transpired on March 25, 1983, when a hearing was conducted to hear and decide the state's previously filed motions to endorse witnesses, to shorten time and to amend the information. Defendant's initial point is denied.

■ Defendant's second point relied on: "The trial court erred to the defend-

ant's prejudice when it instructed the jury on the offense of robbery in the first degree in that there was no evidence or reasonable inference that the defendant used or threatened the immediate use of a dangerous instrument against [the employee of Guaranty]." Contrary to the specific requirements of Rule 30.06(d) the point, as written, does not undertake to aver "wherein and why" there was no evidence or reasonable inferences that defendant used or threatened the immediate use of a dangerous instrument in commission of the robbery. Defendant seemingly argues that a bottle of gasoline is not a dangerous instrument or, if so, defendant did not possess such a contraption and, therefore, the evidence was not sufficient to convict him. Under § 569.020 "1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he ... (3) ... *threatens the immediate use of* a dangerous instrument against any person." (Emphasis supplied). When defendant entered Guaranty's premises and confronted its employee, he had a coat over his right forearm which covered his hand and announced he possessed a bottle of gasoline which he intended to use to blow her up if she did not accede to his demands for money. Thus, there was proof that defendant had threatened the immediate use of a bottle of gasoline and whether the bottle existed vel non was important only insofar as it was likely, which it did, to create the victim's reasonable belief that it was capable of causing her bodily harm. *State v. Dickerson,* 607 S.W.2d 196, 197[1] (Mo.App.1980). "Dangerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." § 556.061(7) [now § 556.061(8)]; MAI–CR2d 33.01, p. 33–14. "The essence of a dangerous instrument is the manner in which the item is used, and inasmuch as the definition refers to any instrument, article or substance, even ordinary items are included within its scope whenever they are 'readily capable of causing death or other serious physical injury.' ... Whether a particular object is a 'dangerous instrument' must be determined by its use under the circumstances." *People v. Brown,* 103 Misc.2d 871, 427 N.Y.S.2d 200, 202[2–3] (1980). In contrast to a "deadly weapon", a "dangerous instrument" is not designed to be employed as a weapon and under normal use may have a perfectly legitimate function. *People v. Brown,* supra, 427 N.Y.S.2d at 202[1]. While a bottle of gasoline may be innocuous in the ordinary sense when used for a harmless purpose, it can readily be transmogrified into a dangerous instrument when employed in a threat to use it as an explosive to produce physical harm. Defendant's second point is denied.

 Defendant's third point relied on states the trial court erred in failing to declare unconstitutional § 569.020–1(4) "in that the language 'threatens the use of what appears to be a deadly weapon or dangerous instrument' is vague and unconstitutionally broad in violation of the defendant's due process rights." The first difficulty we find with the point is that defendant did not raise the issue until at the close of defendant's evidence and before the state offered rebuttal testimony. Rule 24.04 establishes that "in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings." *State v. Wickizer,* 583 S.W.2d 519, 523[4] (Mo. banc 1979); *State v. Danforth,* 654 S.W.2d 912, 917–918[5–6] (Mo.App.1983); *State v. Lindsey,* 630 S.W.2d 191, 195[4] (Mo.App.1982). The second error with the point is that defendant, as previously observed, was charged and convicted of having committed first degree robbery under § 569.020–1(3)—not § 569.020–1(4). Courts do not function to decide hypothetical situations or the constitutionality vel non of statutes impertinent to the cause at hand. Defendant's third point is denied.

 In effect, defendant's fourth and final point relied on is that the trial court erred in failing to declare a mistrial after the state persisted in asking the robbed

employee if she was "frightened" during the ordeal and how did she "feel" upon being confronted by the defendant under the circumstances previously described. The argument presented to this point in part pertains to questions asked by the prosecutor, objected to by defendant and sustained by the court with the defendant asking for no further or additional relief. When, as here, defendant was granted all the relief he requested of the trial court in the instances concerned, he may not now successfully complain that he was not afforded a mistrial on the basis of those particular questions. *State v. Wendell,* 542 S.W.2d 339, 342[8] (Mo.App.1976); *State v. Cissna,* 510 S.W.2d 780, 781[1] (Mo.App. 1974).

The foregoing occurred during the direct examination of the bank teller by the state. Following defendant's cross-examination of the witness and upon the state's reexamination of her, she was asked if she (1) was able to see that "[defendant] was concealing one arm under the jacket" and (2) if defendant "threatened to blow you up and got sixteen hundred dollars from you." Defendant's objections to both questions because they were "leading" were sustained before the witness answered. The prosecutor then inquired: "Were you scared that— were you frightened? How did you feel?" The question was not answered and defense counsel at benchside moved for a mistrial "because the prosecutor is leading the witness [and] I refer specifically to her question, 'Were you frightened?'" The court overruled the motion for mistrial and, per defendant's request, instructed the jury "to disregard the last two answers of the witness [albeit there were none], they are stricken from the record." Without objection the prosecutor then asked: "How did you feel during this incident?" The witness answered: "Well, I was trying to remember all the things that they taught us during our training, I was trying to remain calm, I was trying to comply with his wishes and send him on his way as soon as possible. I was frightened, but trying to remain calm, trying to think clearly." This question and answer concluded the interrogation of the witness by both the state and defendant.

■ When a defendant seeks the drastic relief of a mistrial, such a remedy is to be granted only in extraordinary circumstances where the prejudicial effect of a prosecutor's question can be removed in no other way. The determination of whether or not to declare a mistrial rests mainly within the discretion of the trial judge who is in a better position than we to gauge its prejudicial effect upon the jury. *State v. Reynolds,* 608 S.W.2d 422, 427[5, 6] (Mo.1980). "The drastic remedy of a mistrial is only invoked properly when the prejudice is so great the continuance of the trial would by reason of the prejudice created deny defendant a fair trial." *State v. Collins,* 607 S.W.2d 712, 714[1] (Mo.App.1980).

■ Inquiry of the witness if she was frightened may have been predicated upon the former first degree robbery statute, § 560.120 RSMo 1969, requiring proof of violence or placing the victim "in fear of some immediate injury to his person." *Arnold v. Wyrick,* 646 F.2d 1225, 1227–1228[1] (8th Cir.1981). Asking the robbery victim if she was "frightened" was probably nothing more than asking the obvious and was not such an error, if it was indeed an error, that would require the granting of a mistrial. Defendant's fourth point relied on is denied.

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.