**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Juanita TURIN, Defendant-Appellant.**

No. 50508.

Missouri Court of Appeals,
Eastern District,

Division Four.

Dec. 9, 1986.

Motion for Rehearing and/or Transfer
Denied Jan. 6, 1987.

Application to Transfer Denied
Feb. 17, 1987.

Daniel R. Devereaux, Thomas J. Prebil, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

A jury convicted defendant of two counts of stealing at least $150.00 by deceit. She appeals. We affirm.

Hi-Pointe Community Center, Inc. is a not-for-profit corporation organized by defendant Juanita Turin in 1979. Its function is to develop and implement programs to benefit the Hi-Pointe neighborhood in St. Louis. It provides jobs for unemployed persons who, as part of their duties, assist low-income persons and families in applying for grants to pay their heating bills, collect and distribute donated food, perform minor home repairs, and similar activities. Those so employed by the Center attempt to acquire marketable skills and move on to other jobs, so that other unemployed persons can be hired by the Center. The activities of the Center are funded by agencies of the state and federal governments as well as private agencies. Defendant served as the director of the Center until late 1984 when, pending the outcome of an investigation into allegations of her malfeasance, she took a leave of absence without pay.

The state's investigation yielded evidence that between October 12 and December 30, 1983, defendant caused Janice Thaxton, her close friend, to be paid $2,100.00 in wages under a United Way subsidized work incentive program, though she knew Thaxton had not worked the hours she claimed. The investigation also indicated that in early 1984 defendant submitted and allowed the state to approve Thaxton's application for a $244.00 credit to her account with Laclede Gas Company, though she knew Thaxton was not eligible to receive state energy assistance benefits. Upon this evidence defendant was prosecuted for two counts of stealing at least $150.00 by deceit. Section 570.030, RSMo 1978.

At trial, at the close of the state's evidence and again at the close of all the evidence, defendant moved for judgment of acquittal. The trial court denied both motions and submitted the case to the jury. The jury convicted defendant on both counts.

On appeal defendant first asserts the trial court erred when it denied her motions for judgment of acquittal and submitted the case to the jury. With respect to Count I she argues the state adduced "absolutely no proof, much less proof beyond a reasonable doubt," that Janice Thaxton did not do the work for which she was paid, or that if she did not do the work, that defendant knew anything about it. With respect to Count II, she argues the state adduced "no

testimony to show any improper conduct on the part of the defendant in submitting [the] application" for energy assistance benefits.

■ When the trial court denied defendant's motion for judgment of acquittal at the close of the state's evidence, defendant chose to introduce evidence in her own behalf. With that choice, defendant waived any error with respect to denial of her motion, *State v. Green*, 476 S.W.2d 567, 569 (Mo.1972), and effectively, though perhaps inadvertently, insured the appellate issue of submissibility would be determined on the basis of all the evidence, including so much of her own as favored the state. *State v. Wood*, 553 S.W.2d 333, 334 (Mo.App.1977). We, of course, are obliged to view the evidence, and all inferences fairly flowing therefrom, in the light most favorable to the state. *State v. Anderson*, 663 S.W.2d 412, 414 (Mo.App. 1983). If we find that on this evidence a jury could have found defendant guilty beyond a reasonable doubt, we must affirm. *Id.*

■ Defendant asserts there is "absolutely no proof" she paid Janice Thaxton wages she knew Thaxton had not earned. We disagree. The record shows that from October 12 to December 30, 1983, when Thaxton was allegedly working 40 hours a week for Hi-Pointe, she was working as a full-time employee at National Vendors; that though the time sheets Thaxton submitted to Hi-Pointe indicated she assisted Hi-Pointe's homebound clients from 6 p.m. to 2 a.m. on weekdays, defendant admitted, "I heard that. I never seen it"; that, nevertheless, when Hi-Pointe's bookkeeper, before preparing each payroll, asked defendant "if Thaxton had put in her forty hours," defendant said, "yes"; that though, while she was on Hi-Pointe's payroll, Thaxton allegedly prepared and signed over 200 client referral forms, none of her purported signatures was genuine; and, finally, that when a disgruntled employee asked defendant why Thaxton "was receiving a check if she wasn't doing any work," defendant answered, "if you ever say any-

thing about Janice not working, I will make it impossible for you to get a job anywhere else in the City of St. Louis." Though this evidence cannot fairly be characterized as abundant or overwhelming, it is solid, credible evidence from which a jury could conclude that, beyond a reasonable doubt, defendant caused Janice Thaxton to be paid from United Way funds for work she knew Thaxton had not performed.

■ The evidence that supports the jury's determination that, as alleged in Count II, defendant stole $244.00 from the state by deceit is similarly solid and credible. A former state employee testified that while working for the Division of Family Services' Energy Assistance Program in November 1983, he trained defendant and another Hi-Pointe employee to take energy assistance applications from low-income residents in St. Louis. Janice Thaxton's application for energy assistance was admitted into evidence, and it reflects it was submitted to defendant for processing in November 1983. A handwriting expert testifying for the state verified that defendant signed the application and marked it approved for further processing. The application does not disclose Thaxton's income from, or even the fact of her employment with, National Vendors. Defendant, however, testified she knew Thaxton was employed by National Vendors from October 12 to December 30, 1983. It is undisputed that the state ultimately granted Thaxton's application and caused $244.00 to be credited to her account with Laclede Gas Company. It is also undisputed that Thaxton's income from National Vendors rendered her ineligible to receive energy assistance.

In the face of this evidence defendant argues she was entitled to an acquittal because Thaxton's "application was reviewed by the quality control personnel at the Division of Family Services and ... they [not she] gave final approval to pay the funds." The argument is specious. From the evidence adduced, a jury could fairly have inferred defendant submitted Thaxton's application with the intent to deceive the state as to Thaxton's eligibility

and that Thaxton would not have received the $244.00 credit, were it not for defendant's deception. Accordingly, we find the trial court properly submitted the evidence to the jury. Defendant's first point is denied.

Defendant next asserts the trial court abused its discretion when it limited her cross-examination of a state's witness. The witness, a handwriting expert, testified she was employed by the state on a contract basis. When defendant asked her on cross-examination what she had charged the state for the work she had done on defendant's case, the state objected on grounds of relevance. The trial court sustained the objection. Defendant asserts that with this ruling the trial court impermissibly restricted her ability to show the witness' bias.

■ A criminal defendant is unquestionably entitled to attempt to impeach a state's witness on cross-examination. *State v. Thompson*, 280 S.W.2d 838, 840–841 (Mo.1955). The trial court, however, is vested with discretion to determine the extent of cross-examination and may properly limit defendant's inquiry into matters it deems collateral. *State v. Thurmond*, 693 S.W.2d 909, 912 (Mo.App.1985). In sustaining the state's objection, the trial court stated, "[The witness] did testify she's under contract with the State of Missouri. She further testified that she was remunerated. The exact amount of remuneration, I can't see how that is material or relevant.... Whether she received ten thousand or a hundred thousand for testifying isn't going to change her interest in the case." The trial court's decision is not manifestly incorrect, and we therefore do not disturb it. Defendant's second point is denied.

In her third point defendant claims the trial court erred when it submitted state's exhibit 31, a 160–page energy assistance manual, to the jury when only two pages of the manual were the subject of testimony at trial. She argues that submitting the entire manual to the jury unnecessarily highlighted impertinent matters and operated substantially to her prejudice.

■ We note defendant did not object when the state offered the manual into evidence; indeed, defense counsel stated he had "no objection" to its admission. Whether to send an exhibit to the jury room is a matter within the trial court's discretion. *State v. Diercks*, 674 S.W.2d 72, 79 (Mo.App.1984). Defendant's conclusory allegation of "substantial prejudice" does not amount to a showing of an abuse of that discretion. Her third point is therefore denied.

■ In her final point defendant asserts the verdict directors the trial court submitted to the jury for Counts I and II erroneously failed to advise the jury it could assess fines, in lieu of imprisonment, as punishment. Defendant has failed to preserve this point for appeal because she has failed to set the verdict directors forth in full in the argument portion of her brief. Rule 30.06(e); *State v. Perkins*, 650 S.W.2d 339, 340 (Mo.App.1983). Reviewing for plain error, we observe that the verdict directing instructions did not advise the jury that, if it found the defendant guilty, it could assess punishment as a fine to be set by the court in lieu of imprisonment. The verdict forms did include such an option. After the jury retired for its deliberations, a note was sent to the trial judge inquiring whether the jury could impose "no imprisonment just fine." The judge responded with a note: "Yes. In accordance with verdict forms." Thereafter the jury assessed punishment on each count at "no imprisonment but a fine, in an amount to be determined by the court." Accordingly, we find no manifest injustice resulted from submission of the erroneous verdict directors. Rule 29.12(b). Defendant's final point is denied.

The judgment is affirmed.

GARY M. GAERTNER, P.J., and SIMON, J., concur.