STATE of Missouri, Plaintiff/Respondent,

v.

Cedric TANKINS, Defendant/Appellant.

Cedric TANKINS, Plaintiff/Appellant,

v.

STATE of Missouri, Defendant/Respondent.

Nos. 60904, 62850.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 23, 1993.

John Klosterman, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Presiding Judge.

Following a jury trial in the Circuit Court of the City of St. Louis, defendant Cedric Tankins was convicted of two counts of bur-

glary in the first degree, § 569.160, R.S.Mo. 1986, one count of attempted forcible sodomy, § 566.060, R.S.Mo.Cum.Supp.1992, and one count of armed criminal action, § 571.-015, R.S.Mo.1986 (all further statutory references shall be to R.S.Mo.1986 unless otherwise noted). The court sentenced defendant as a prior offender to five years on each burglary count, ten years for attempted forcible sodomy and three years for armed criminal action, with the sentences to run consecutively for a total of twenty-three years. Defendant appeals his convictions on four grounds: (1) the trial court erred in determining that the knife used by the defendant was a "dangerous instrument;" (2) the prosecutor impermissibly used peremptory strikes to remove African–Americans from the venire panel; (3) the City of St. Louis maintains a discriminatory policy and practice in the selection of grand and petit juries; and (4) the reasonable doubt instruction given by the trial court, MAI–CR3d 302.04, is unconstitutional. We affirm.

Viewed in the light most favorable to the verdicts, the evidence shows that in the early morning hours of September 4, 1990, defendant entered the home of Erma Price, in the City of St. Louis, through a kitchen window from which he moved an electric fan. Mrs. Price awoke to find defendant's finger in her mouth, and she screamed. Defendant said to her, "Scream, bitch, and I'll kill you." Mrs. Price's scream awoke her husband, at which time defendant fled from the premises.

Shortly thereafter, about four blocks from the Price home, defendant entered the home of C.H. in the City of St. Louis. Upon awakening and seeing defendant, C.H. screamed. Defendant put a towel over her mouth and a knife to her throat. He looked at C.H.'s boyfriend, Timothy, who was sleeping on the floor beside the bed, but Timothy did nothing. Defendant said to C.H., "Now I want you to lick it and suck it and get it really hard," pushing C.H.'s head toward his groin area. Timothy then snuck up on defendant and jumped him. While the two men fought, C.H. escaped defendant's grasp and ran into the bathroom. Defendant eventually disengaged himself from the struggle and fled from the scene.

■ Defendant first claims error as to his conviction for armed criminal action under § 571.015, which provides in relevant part: "[A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action...." Specifically, defendant asserts that the knife that was used in the commission of the underlying felony was not a "dangerous instrument" or "deadly weapon" within the meaning of § 571.015. The state does not contend that the knife was a "deadly weapon." *See* § 556.061(10). Therefore, the question is whether the trial court clearly erred in finding that the knife was a "dangerous instrument."

A "dangerous instrument" is "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]" Section 556.061(9). "Serious physical injury" is "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" Section 556.061(28), R.S.Mo. Cum.Supp.1992.

■ As the language of § 556.061(9) suggests, the key consideration in determining whether an object is a dangerous instrument is whether it can kill or seriously injure "under the circumstances in which it is used." *See State v. Anderson,* 663 S.W.2d 412, 416[4] (Mo.App.1983). Unlike a deadly weapon, a dangerous instrument is not designed for use as a weapon and may have a perfectly normal function under ordinary circumstances. *Id.* at 416[5].

■ Defendant characterizes the knife as a "butter knife." He contends that "a butter knife, without any sharp edge or point[,] could at most scratch the skin." This may or may not be true with respect to a typical

"butter knife," but, with regard to the knife in question here, the contention is inapposite. First, this knife has a serrated edge. It would be a simple matter to cut the flesh by drawing it across the throat. Second, assuming arguendo that defendant's description of this knife is accurate, the contention still would be without merit. It is not important whether the object is in fact capable of producing harm. The *threat* to use the object to produce harm transforms it into a dangerous instrument. *Anderson*, 663 S.W.2d at 416[6]. We conclude that the knife was capable of inflicting serious physical injury under the circumstances in which it was used, and that the trial court did not err in declaring it to be a dangerous instrument. Point denied.

■ Defendant's second point on appeal is a claim based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant contends that the trial court erred in finding that the prosecutor used his peremptory strikes in a racially nondiscriminatory manner and in denying defendant's motion to quash the jury panel. Defendant argues that the ruling infringed his right to equal protection under the law. U.S. Const. amend. XIV; Mo. Const. art. I, § 2. According to defendant, the prosecutor failed to explain adequately his use of four of six strikes to eliminate black venirepersons from the panel while leaving two similarly situated white venirepersons.

■ To overturn the trial court's finding of fact that the prosecutor exercised no purposeful discrimination, the finding must be "clearly erroneous." *State v. Gray*, 849 S.W.2d 115, 117[2] (Mo.App.1993). "Clearly erroneous" means that "the reviewing court is left with a definite and firm impression that a mistake has been made." *State v. Prowell*, 834 S.W.2d 852, 856[11] (Mo.App. 1992).

■ Our Supreme Court, in *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992), established a three-step procedure for trial courts to use in deciding the validity of a timely *Batson* claim. The defendant first must raise a *Batson* challenge to one or more venirepersons whom the prosecutor struck and identify the cognizable racial group to which they belong. *Id.* at 939[12]. Second, the prosecutor must advance reasonably specific and clear race-neutral explanations for the strike. *Id.* There is a presumption that the explanation is race-neutral "unless a discriminatory intent is inherent in the explanation." *Id.* at 939 n. 6 (citing *Hernandez v. New York*, 500 U.S. ——, ——, 111 S.Ct. 1859, 1866[4], 114 L.Ed.2d 395, 406 (1991)). Finally, if the prosecutor's explanation is acceptable, the defendant has an obligation to show that the strikes were in fact racially discriminatory and that the prosecutor's proffered reasons were merely pretextual. *Parker*, 836 S.W.2d at 939[12].

■ The trial court should consider the validity of the defendant's claim and the plausibility of the state's justifications for its strikes in light of all the facts and circumstances of the case. *Id.* at 939[13]. The court may evaluate other factors as well, including the existence of similarly situated white venirepersons who were not struck; the extent to which the proffered reasons for the strikes were relevant to the crime charged, the evidence and the potential sentence; the conduct during voir dire of the prosecutor and the venirepersons who were struck; the relationship between the trial court and the prosecutor; and "other objective factors bearing on the state's motive to discriminate on the basis of race." *State v. Aziz*, 861 S.W.2d 803, 805 (Mo.App.E.D. 1993). In weighing the factors, the trial court should bear in mind that the burden of persuasion remains at all times with the defendant. *State v. Hudson*, 822 S.W.2d 477, 481[3] (Mo.App.1991).

At the close of voir dire, defendant objected to the prosecutor's strikes of Donna Hankins, Annie Lee Russell, Maryree Hunley and Vurnell Williams. All four women are black, as is the defendant. The prosecutor, who also struck two white venirepersons, explained that "the common theme for all of the strikes . . . is that they have family members

[who have] either been charged or convicted of a crime." Defendant did not challenge this explanation at trial, nor did he point out at that time that the prosecutor did not strike two white venirepersons who also fit the prosecutor's "common theme." Hearing no further objection, the trial court found that the prosecutor's explanation was race-neutral and denied defendant's motion to quash the jury panel. In his appeal on this point, defendant for the first time challenges the prosecutor's explanation and his failure to strike similarly situated white venirepersons.

■ Viewing the facts under the three-step procedure enunciated in *Parker*, we cannot say that the trial court's denial of defendant's *Batson* challenge was clearly erroneous. Defendant satisfied the first element of the *Parker* procedure by expressly raising a *Batson* challenge to the state's strikes of four specific venirepersons, and by identifying the cognizable racial group to which they belong. *See Parker*, 836 S.W.2d at 939[12]. Because defendant raised his challenge before the venire was excused, the challenge was timely. *Id.* at 935[10].

■ Next, the state advanced its reason for striking the four venirepersons, namely, that they had relatives who were charged with or convicted of a crime. In evaluating the existence of discriminatory purpose in the state's explanation, we defer considerably to the trial court's finding because it involves a determination of credibility. *State v. Pitts*, 852 S.W.2d 405, 407[6] (Mo.App.1993). It is relevant that the state struck two white venirepersons who had relatives charged with or convicted of a crime.

■ Given race-neutral reasons for the state's peremptory strikes, defendant then had an affirmative duty to show that these reasons were pretextual and that the strikes were racially motivated. *Parker*, 836 S.W.2d at 939[12]; *State v. Antwine*, 743 S.W.2d 51, 64[13] (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). Defendant made no such showing. By failing to fulfill this obligation, defendant did not preserve for review a challenge to the state's reason. *See State v. Jackson*, 809 S.W.2d 77, 81[2, 3] (Mo.App.1991). It is not effective to challenge the state's reasons for the first time on appeal. Defendant's duty is to the trial court, which makes its decision after observing voir dire firsthand. *Prowell*, 834 S.W.2d at 856[10]. As we stated in *Prowell*, "[i]f the trial court and defendant were satisfied with the state's reasons, 'this court is hardly in a position to disagree.' " *Id.* (quoting *Jackson*, 809 S.W.2d at 81[3] ). Defendant's second point is denied.

■ Defendant's third point on appeal is that the trial court erred in denying his motion to quash the indictment or, in the alternative, to stay the proceedings. He first alleges noncompliance with §§ 494.400 to 494.505, R.S.Mo.Cum.Supp.1992, in the selection of grand juries in the City of St. Louis. Defendant was tried on a substitute information issued on May 14, 1991, replacing the grand jury indictment of October 2, 1990. Defendant offered his motion challenging the indictment on October 22, 1990. He did not contest the substitute information. Therefore, the information rectified and made moot any error in the original grand jury indictment. *State v. Landers*, 841 S.W.2d 791, 793[7] (Mo.App.1992).

Defendant also claims error with regard to the selection of petit jury panels. The Honorable Ronald M. Belt held a hearing on October 10 and 13, 1990, on a motion to stay all jury trials in the City of St. Louis because of problems with the procedures used to select grand and petit juries. The evidence adduced at this hearing was incorporated by reference into all pending cases, of which the instant case was one. On October 16, 1990, Judge Belt sustained the motion and stayed all jury trials in the Circuit. He specifically found that the procedures used in granting juror continuances resulted in a non-random selection of some petit jury panels. The Board of Jury Commissioners immediately corrected the identified flaws, and Judge Belt lifted the stay.

Defendant has presented no evidence of deficiencies in the new procedures, under which the venire panel for his trial was chosen. The Board of Jury Commissioners adequately addressed the defects prior to defendant's trial. *See State v. Macon,* 845 S.W.2d 695, 697 (Mo.App.1993); *State v. Wheeler,* 845 S.W.2d 678, 682[8] (Mo.App.1993). Point denied.

In his final point, defendant argues that the trial court committed plain error in submitting to the jury MAI–CR3d 302.04, the reasonable doubt instruction. Defendant contends that the instruction equates the term "firmly convinced" with reasonable doubt, thereby suggesting that "the law does not require proof which 'overcomes every possible doubt.'" Defendant maintains that the instruction permits jurors to return a guilty verdict without eliminating every possible reasonable doubt.

This argument stems from the United States Supreme Court's decision in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), striking down Louisiana's reasonable doubt instruction. Our Supreme Court most recently addressed this issue earlier this year, upholding the validity of the instruction. *State v. Griffin,* 848 S.W.2d 464, 469[8] (Mo. banc 1993). We are bound to follow the last controlling decision of our Supreme Court. *State v. Flenoid,* 838 S.W.2d 462, 470[16] (Mo.App.1992). Defendant's fourth point is denied.

The judgment of the trial court is affirmed.

STEPHAN and PUDLOWSKI, JJ., concur.