**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Kevin A. JOHNSON,
Defendant/Appellant.**

**No. ED 85588.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 20, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 24, 2006.

Application for Transfer Denied
Feb. 28, 2006.

Timothy Joseph Forneris, St. Louis, MO, for appellant.

Deborah Daniels, Evan Joseph Buch-heim–co-counsel, Victor J. Melenbrink–co-counsel, Jefferson City, MO, for respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Kevin A. Johnson (Defendant) appeals from a judgment of conviction of second-degree murder and armed criminal action. Defendant alleges the trial court plainly erred in failing to instruct the jury to disregard comments made by the prosecutor during closing argument regarding the use of Defendant's hands and/or feet as dangerous instruments and challenges the sufficiency of the evidence to support his armed criminal action conviction. We affirm.

*Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the evidence adduced at trial revealed the following. Defendant was at a restaurant in the early morning hours. A dispute arose between a waitress and another customer who knew Defendant from school. Another customer, Michael Schnelle (Victim), attempted to intervene in the dispute. Defendant also became involved in the dispute. The waitress asked the customer who knew Defendant to leave, and he did.

As Victim was leaving the restaurant, Defendant stood up on his seat and started calling out "white power." Defendant also gave a "Nazi salute" or a "sign for Hitler." Defendant pulled up his pants leg to reveal tattoos, one of which was a swastika. Defendant followed Victim out the restaurant door and yelled "Come back here, Jew boy." Defendant followed Victim across the street and pointed and yelled at him "You Jew m----- f-----. You Jew."

Defendant caught up to Victim and "slugged him in the back of the head," knocking him to the ground. Defendant then kicked Victim "a few times" and did "a little jump up into the air and stomp on his head." Another individual came over and attempted to intervene while Defendant was stomping on Victim. Eventually, Defendant attempted to return to his car, but other individuals prevented him from leaving.

Witnesses testified that Victim's head was "almost totally caved in" and that he was "bleeding from the eyes, ears, nose, and mouth." An ambulance took Victim to the hospital, where he died the next day as a result of severe blunt force trauma. Tests revealed that Victim suffered a sub-arachnoid hemorrhage, which is bleeding in and around the brain, and he had blood in his brain tissue and "snapped" nerve fibers in his brain. He also suffered a broken nose and a large number of facial abrasions and lacerations.

A laboratory analysis of Defendant's boots revealed the presence of Victim's blood around the right heel and along the inner side of the left sole.

Defendant was charged by indictment with murder in the first degree, a class A felony in violation of Section 565.020,[1] and armed criminal action, a felony in violation of Section 571.015. The case proceeded to a jury trial, after which the jury found Defendant guilty of second-degree murder and armed criminal action.

Defendant moved for a motion for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. The trial court denied both mo-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

tions. The trial court entered a judgment in accordance with the jury verdict and sentenced [2] Defendant to concurrent terms of life imprisonment with the possibility of parole for the second-degree murder conviction and twenty years' imprisonment for the armed criminal action conviction.

### Discussion

■ Defendant raises two points on appeal. In his first point, Defendant argues that the trial court plainly erred in failing, *sua sponte*, to instruct the jury to disregard the following comments made by the prosecutor during closing argument:

> And if he's guilty of murder in the first degree, he's guilty of armed criminal action, because there's only two elements of armed criminal action, that he's guilty of a murder and that he did it with a dangerous instrument, his hands and his feet. And, ladies and gentlemen, there can be no doubt that these are dangerous instruments, because the victim's DNA ends up only not on his hands—not on his hands, not on his shirt, not on his pants, but on the boots.... Doesn't have to be his feet though. Even if he beats him with his hands, under the circumstances that they were used.... So either circumstance, feet or no feet, fist and feet, fist alone, feet alone, armed criminal action.

■ Defendant did not object to the comments during trial nor did he file a motion for new trial raising this claim of error. Therefore, the claim is not properly preserved for appellate review. *State v. Hagan*, 113 S.W.3d 260, 267 (Mo.App. W.D.2003). A claim not properly preserved for appellate review may be considered for plain error at our discretion. Rule 30.20.[3] Under this standard, reversal requires a plain error affecting a substantial right that results in manifest injustice or miscarriage of justice. *Id.* Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case. *State v. Johnson*, 150 S.W.3d 132, 136 (Mo.App. E.D.2004). Plain error review is to be used sparingly. *State v. Knese*, 985 S.W.2d 759, 770 (Mo. banc 1999). A defendant bears the burden of demonstrating manifest injustice or miscarriage of justice. *State v. Tokar*, 918 S.W.2d 753, 770 (Mo. banc 1996).

■ Defendant maintains that the prosecutor misstated the law when he commented during closing argument that Defendant's hands and feet could constitute dangerous instruments for purposes of the armed criminal action charge. Misstatements of the law are impermissible during closing arguments and a duty rests upon the court to restrain such arguments. *State v. Petty*, 967 S.W.2d 127, 136 (Mo. App. E.D.1998).

Section 571.015.1 provides in relevant part:

> [A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action....

The State does not contend that Defendant used a deadly weapon to commit the murder. Therefore, we are only concerned with the definition of a dangerous instrument.

Section 556.061(9) provides:

> 'Dangerous instrument' means any instrument, article or substance, which, under the circumstances in which it is

---

**2.** Defendant waived his right to jury sentencing.

**3.** All rule references are to Mo. R.Crim. P.2005, unless otherwise indicated.

used, is readily capable of causing death or other serious physical injury; . . . .

We cannot conclude that the prosecutor's comments clearly misstated the law. First, Section 556.061(9) does not specifically prohibit body parts from the definition of a dangerous instrument. Second, as both the State and Defendant acknowledge, Missouri courts have not conclusively held that body parts are not dangerous instruments as defined in Section 556.061(9). *See, e.g., State v. Burch*, 939 S.W.2d 525, 530 (Mo.App. W.D.1997) (elbow qualified as dangerous instrument); *Seiter v. State*, 719 S.W.2d 141, 143–144 (Mo.App. E.D.1986) (declined to classify hands as dangerous instrument). The cases do stress, however, that the circumstances and facts of each case affected the determination of the court. The prosecutor argued that under the circumstances of this case, the jury should find that Defendant's hands or feet were dangerous instruments. Accordingly, the trial court did not plainly err in failing, *sua sponte*, to instruct the jury to disregard the prosecutor's comments.

▇▇▇ We note that even if the prosecutor's comments were improper, Defendant has not met his burden to show that the comments had a decisive effect on the outcome of the trial. To reverse a conviction under plain error review on a claim of improper closing argument, a defendant must establish not only that the argument was improper, but also that it had a decisive effect on the outcome of the trial and would amount to a manifest injustice or miscarriage of justice if the error was left uncorrected. *State v. Jones*, 128 S.W.3d 110, 113 (Mo.App. E.D.2003). For an argument to have had a decisive effect, there must be a reasonable probability that, in the absence of the argument, the verdict would have been different. *State v. Williams*, 145 S.W.3d 874, 878–879 (Mo.

App. E.D.2004). Statements made during closing argument rarely amount to plain error. *Jones*, 128 S.W.3d at 113. We especially hesitate to find plain error in the context of closing argument because the decision to object is often a matter of trial strategy, and in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *State v. Edwards*, 116 S.W.3d 511, 536 (Mo. banc 2003).

The jury was instructed on the definition of a dangerous instrument under Section 556.061(9). We presume the jurors followed this instruction. *See State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999). The jury could have found from the evidence that Defendant used his boots to stomp or to kick Victim. Defendant concedes that such a finding would meet the dangerous instrument requirement to support a conviction for armed criminal action. *See, e.g., State v. Dooley*, 851 S.W.2d 683, 687–688 (Mo.App. E.D.1993) (steel-toed boots specific description for dangerous instrument in information); *State v. Taylor*, 645 S.W.2d 199, 202 (Mo.App. S.D. 1982) (cowboy boot is a dangerous instrument). Therefore, we cannot reasonably conclude that in the absence of the prosecutor's comments, the verdict would have been different. Thus, the prosecutor's comments did not rise to the level of plain error requiring *sua sponte* intervention by the trial court. Defendant's point one on appeal is denied.

▇▇▇ In his second point on appeal, Defendant argues that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because insufficient evidence existed from which a reasonable juror could find that Defendant used a deadly weapon or a dangerous in-

strument as required to support a conviction for armed criminal action.

In reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we do not weigh the evidence but rather we determine whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Shinn*, 921 S.W.2d 70, 72–73 (Mo.App. E.D.1996). The evidence, including all reasonable inferences drawn therefrom, is viewed in the light most favorable to the verdict, and all evidence and inferences to the contrary are disregarded. *Id.* at 72. The trier of fact determines the credibility of the witnesses. *Id.* at 73. The trier of fact may believe all, some or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case. *Id.*

 Again, the State does not contend that Defendant used a deadly weapon, and therefore, that element of Section 571.015.1 is not at issue. The key consideration in determining whether or not an object is a dangerous instrument under Section 556.061(9) is whether the object can kill or seriously injure "under the circumstances in which it is used." *State v. Tankins*, 865 S.W.2d 848, 851 (Mo.App. E.D.1993). Unlike a deadly weapon, a dangerous instrument is not designed for use as a weapon and may have a perfectly normal function under ordinary circumstances. *Id.*

Witnesses testified seeing Defendant kick Victim a few times and jump in the air and stomp on his head. Victim's head was "almost totally caved in" and he was "bleeding from the eyes, ears, nose, and mouth." A laboratory analysis of Defendant's boots revealed the presence of Victim's blood around the right heel and along the inner side of the left sole. The forensic pathologist who conducted the autopsy on Victim testified that Victim's injuries were consistent with a person being struck and kicked or stomped in the head multiple times. This evidence is sufficient evidence from which a reasonable juror could have found beyond a reasonable doubt that Defendant used his boots to stomp or to kick Victim. Again, Defendant concedes that such a finding would meet the dangerous instrument requirement to support a conviction for armed criminal action. *See, e.g., Dooley,* 851 S.W.2d at 687–688 (steel-toed boots specific description for dangerous instrument in information); *Taylor,* 645 S.W.2d at 202 (cowboy boot is a dangerous instrument).

 Defendant argues that we should essentially disregard the testimony of the State's witnesses because the doctrine of "destructive testimony" or "destructive contradictions" applies in that the State's witnesses presented three different stories about what [Defendant] had done to [Victim]." Defendant's argument is misplaced. Under this doctrine, a witness's trial testimony that is marred by rampant inconsistencies and contradictions is not probative evidence. *State v. Case,* 140 S.W.3d 80, 92 (Mo.App. W.D.2004). However, the doctrine does not apply to inconsistencies between the testimony of one witness and another witness at trial, *Id.,* as Defendant argues. The variances in witnesses' testimonies are credibility issues for the jury.

Accordingly, Defendant's point two on appeal is denied.

### Conclusion

The judgment of conviction and sentence of the trial court is affirmed.

NANNETTE A. BAKER, P.J., and ROBERT G. DOWD, JR., J., concur.