STATE of Missouri, Respondent,

v.

Robert L. THIEMAN, Appellant.

No. SD 30818.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 10, 2011.

Rosalynn Koch, Columbia, for Appellant.

Chris Koster, Atty. Gen. and Timothy A. Blackwell, Asst. Atty. Gen., Jefferson City, for Respondent.

Before BARNEY, J., BATES, J., and SCOTT, J.

PER CURIAM.

Robert L. Thieman ("Appellant") appeals his conviction by a jury for one count of the class A felony of assault in the first degree, a violation of section 565.050;[1] one count of the unclassified felony of armed criminal action, a violation of section 571.015; and one count of the class B felony of unlawful use of a weapon, a violation of section 571.030, RSMo Cum.Supp. 2003. He was sentenced by the trial court to fifteen years imprisonment on the assault count and ten years each on the other two counts with the sentences to run concurrent to the fifteen year assault sentence. In his sole point relied on Appellant asserts the trial court plainly erred in overruling his objection to testimony from Melissa Givens ("Ms. Givens") regarding statements Appellant made to her in conjunction with a sentencing report prepared in relation to a previously withdrawn guilty plea. We affirm the judgment and sentence of the trial court.

Appellant does not challenge the sufficiency of the evidence to support his convictions. Viewing the evidence in the light most favorable to the jury's verdict, *State v. Thomas*, 272 S.W.3d 421, 426 (Mo.App. 2008), the record reveals that Appellant had been friends with David Reed ("Victim") for over thirty years; that he purchased the property on which he resided from Victim and his wife, Doris; and that Victim and Doris lived across the street from Appellant.[2] In the spring of 2005,

1. Unless otherwise stated, all statutory references are to RSMo 2000.

2. For ease of analysis we have chosen to address some of those involved in this matter by their first names; we mean no disrespect in so doing.

while Victim and Doris were out of town, Victim's son, Donald Reed ("Donald"), and some of his friends were on Victim's property "sighting" their guns and shooting. When Appellant went to get his mail at the end of his driveway, he yelled at Donald; told Donald that he had guns that he could shoot, too; and told Donald that Victim and Doris would not think it was funny if they came home to holes being shot in their roof.

Thereafter, on July 5, 2005, Donald was again visiting Victim and Doris along with his children, a friend, and his friend's children. The children were apparently making a great deal of noise so Appellant yelled at the group that they needed to "shut those fucking little bastards up." Later in the evening, Appellant fired some shots in the direction of Victim's home and the adults took all of the children inside. Doris woke Victim up and told him that Appellant was outside "hollering and shooting his gun." Victim then proceeded to drive to Appellant's house to see what was going on. Victim drove up Appellant's driveway at a speed of approximately five miles per hour and, as it was dark, he had his headlights on. When he was about twenty to thirty feet down the driveway, Appellant, who admitted to consuming at least six beers, shot at the vehicle with a .22 rifle. The gunshot broke the windows out of the vehicle and bullet fragments and glass struck Victim in both his arms and in his knee. Appellant approached the vehicle and offered to help Victim, but Victim went home and his Wife called for medical assistance. Among other things, Victim underwent surgery to remove metal fragments from his body; has permanent nerve damage; and suffers from post-traumatic stress disorder.

Initially, Appellant pled guilty to the crimes charged and a sentencing assessment report ("SAR") was prepared by Ms. Givens in conjunction with the preparation of that plea. Ms. Givens interviewed Appellant at that time. Thereafter, Appellant's plea agreement was rejected by the plea court and Appellant was allowed to withdraw his guilty plea. He then entered a plea of not guilty and this matter proceeded to trial.

A trial was held on June 28 and 29, 2010. At trial, after detailing his history of problems with Donald, Appellant testified that on the evening in question he "had a few beers . . . [m]aybe a six-pack." He related that on his way to shut his gate that evening he "popped off some shots" from his firearm. He stated he "was more or less always armed at night . . . because of the coyote[ ]" problem in the area. On his way back toward his trailer, he "heard a car . . . come flying up . . ." the driveway and he "figured it would slow down, but it didn't." Appellant related he then "spun out of the way, pulled the rifle down, started shooting" because he believed "they w[ere] going to run [him] over." Appellant related he was "in a state of shock" when he realized he had shot Victim, because he did not know who was in the vehicle and had assumed that the driver was "Donald or some of his running buddies." He related he felt that he had "the right to defend [himself]" on his own property because he believed the vehicle was going "to try and run [him] over in [his] own driveway." After Victim drove himself home, Appellant returned to his trailer, "got a few more beers and a pack of cigarettes and sat on the hood of [his] car, waiting for everything to unfold."

On cross-examination, the State asked Appellant if he recalled telling Ms. Givens [3]

---

**3.** The jury was not informed that Ms. Givens obtained her information from her discus-

sions with Appellant in conjunction with his

that he had "seven to 12 beers before [the] shooting" and Appellant indicated he told her that he "drank quite a few, waiting on the police to arrive." Specifically, the following occurred:

THE STATE: [Appellant], I want to talk to you a little bit about the beer you had. I think you said, on direct examination, you had six beers?

APPELLANT: About that.

THE STATE: It was more than that, wasn't it?

APPELLANT: By the end of the evening, yes, it was.

THE STATE: You told [Ms.] Givens, a lady in West Plains, you'd had seven to 12 beers before that shooting, correct?

APPELLANT: I believe she had asked me what I had had to drink, that day. Well, I drank quite a few, waiting on the police to arrive.

THE STATE: How many did you drink, all day?

APPELLANT: Usually, on a day like that, starting early like I did, maybe 10.

THE STATE: So you'd had at least a six-pack, by the time of the shooting.

APPELLANT: Yes.

THE STATE: And then you drank what? Another six-pack, waiting for the police?

APPELLANT: They went down rather quickly, yes.

Regarding his use of his firearm prior to the shooting, Appellant then testified to the following:

THE STATE: You told [Ms.] Givens that you were shooting, that night, because you were shooting at coyotes, correct?

APPELLANT: Well, I had the gun, because we did have a problem with coyotes out there, yes.

THE STATE: So you were just shooting down the gully, just to be shooting, on the night of July 5th. Because you were ticked off.

APPELLANT: Well, yeah, I guess so.

THE STATE: No. I—I'm asking you. Either you were or you weren't. Were you shooting the gun down the gully on July 5th?

APPELLANT: Yes.

THE STATE: And you did it because you were ticked off.

APPELLANT: Yes.

THE STATE: You weren't shooting at a coyote.

APPELLANT: There could have been one out there, but I—I don't know.

THE STATE: You weren't shooting at a coyote.

APPELLANT: No, I was not aiming at a coyote.

After the defense rested its case, the State informed the trial court that it was going to call Ms. Givens as a rebuttal witness. Counsel for Appellant objected to Ms. Givens' testimony on the basis that it was barred by Rule 24.02(d)(5). The following argument then occurred:

COUNSEL FOR APPELLANT: The only time that any statements that [Appellant] made, as part of this interview for the SAR[ ], can come in, when the plea has been withdrawn, is to rebut.

As I listened to [the State's] questioning of [Appellant] regarding statements that he made to Ms. Givens, I had, in front of me, [Appellant's] version. Which is—basically, would have been his statements about the case. On the stand, in the defense's case, [Appellant] did not deny that he had made any of those statements. Therefore, impeachment is

prior withdrawn plea of guilty and her prepa-

ration of an SAR.

not appropriate, and any statements that he made, as part of the SAR[ ] report, should not come in.

THE COURT: It's though you're saying the rule is that the statements made in preparation of the SAR[ ] report cannot be used, by the State, in its case in chief.

COUNSEL FOR APPELLANT: That is correct.

THE COURT: However, they can be used in rebuttal—to rebut statements that [Appellant] makes.

COUNSEL FOR APPELLANT: If he denies having made those statements. And he didn't deny making any of those statements. I mean, like I said, Your Honor, I was sitting here reading along, [Appellant's] version, and he acknowledged that he made those statements.

THE COURT: What are you going to ask Ms. Givens?

THE STATE: Your Honor, he equivocated. And, under *State v. Cravens*, once they deny or equivocate, then those prior inconsistent statements get to come in. What I was going to offer with her,—first of all, we have no intention of offering any evidence of the prior proceedings, negotiations,—

THE COURT: All right.

THE STATE:—any of that. I told her not even to tell us where she works. We don't want any of that. All I'm going to do is, basically, move her through the statements I want to elicit, which is, he denied consuming approximately six to 12 beers, prior to the incident. He quibbled on that. And he said that—

COUNSEL FOR APPELLANT: I believe he said he had six.

THE STATE: Well, yeah. But he told her six to 12, before the incident.

THE COURT: All right, that's a difference.

THE STATE: That's, you know, a half case of beer. In reference to the shots that were fired earlier, [Appellant] said he was shooting at coyotes. He completely contradicted that today. Today, it was I was shooting down the gully, basically, because I was pissed off. And he said nothing to her about this car running him over. He did use the term self-defense, but this is a whole new story, and the details are all new. He also said, when he shot, he only meant to scare [Victim].... Today, it's I had no choice; the car was going to run me over. There's a difference there, and that was three years ago. It was the year after this happened.

COUNSEL FOR APPELLANT: He said that the car quickly pulled into his driveway, and he spun around, in self-defense. He believed that Donald ... was coming to his residence to assault him.

THE STATE: Today, it was he didn't know who was in the car.....

THE STATE: Once [Appellant] takes the stand, if he had made a statement [that] had been suppressed, it would come in.

THE COURT: So it's those four things you're going to take up.

THE STATE: Yes.

THE COURT: The beer.

THE STATE: The beer.

THE COURT: The coyotes.

THE STATE: The coyotes.

THE COURT: The—

THE STATE: Just meant to scare him.

THE COURT: Just meant to scare him. And what else? Was it just three things?

THE STATE: I want to be safe. I don't want to be—

THE COURT: I'm going to overrule the defense objection on those three items, which appear to the Court to be inconsistent with his statement at trial.

COUNSEL FOR APPELLANT: So that would be the coyotes, the six to 12 beers. What was the third one?

THE STATE: He only meant to scare [Victim].

THE COURT: Anything else?

THE STATE: That's it.

THE COURT: All right.

Accordingly, Ms. Givens was allowed to testify as follows:

THE STATE: In July or June of 2006, did you talk to [Appellant]?

MS. GIVENS: I did, yes.

. . . .

THE STATE: And I'm going to ask you, at the time that you talked to him, was it about a shooting that took place a year earlier?

MS. GIVENS: Yes.

THE STATE: Did he tell you that, before the shooting, he consumed approximately six to 12 beers?

MS. GIVENS: That is correct, yes.

THE STATE: And did he tell you that the shots that were fired, earlier in the evening, that he was shooting at coyotes?

MS. GIVENS: That is correct.

. . . .

CROSS EXAMINATION

COUNSEL FOR APPELLANT: Just to clarify, you asked him about how many beers he had had, prior to the shooting, correct?

MS. GIVENS: Correct.

COUNSEL FOR APPELLANT: And he told you six to 12 beers.

MS. GIVENS: Correct.

COUNSEL FOR APPELLANT: He also told you that he was shooting at coyotes, at the time,—or earlier that evening, correct?

MS. GIVENS: Correct.

COUNSEL FOR APPELLANT: Did he also tell you that he was afraid for his safety?

MS. GIVENS: Probably not in those exact words, but he did indicate that he was acting in what he believed to be self-defense.

. . . .

REDIRECT EXAMINATION

THE STATE: Did he tell you that he shot because the car—the driver of the car was trying to run over him?

MS. GIVENS: No.

. . . .

RECROSS EXAMINATION

COUNSEL FOR APPELLANT: But he did tell you that the car quickly pulled into his driveway, correct?

MS. GIVENS: Yes.

COUNSEL FOR APPELLANT: And he also told you that he believed he was acting in self-defense.

MS. GIVENS: That is my recollection, yes.

COUNSEL FOR APPELLANT: Thank you. Nothing further.

THE STATE: Nothing further. Thank you, ma'am.

Saliently, there was no mention to the jury about the fact that Appellant had withdrawn his previous plea of guilty or that Ms. Givens had obtained her information while preparing an SAR in conjunction with Appellant's prior plea of guilty.

At the close of all the evidence, the jury convicted Appellant of the three crimes charged and he was sentenced as set out above. This appeal by Appellant followed.

■ In his sole point relied on Appellant asserts the trial court plainly erred in overruling his objection to Ms. Givens' testimony that he "told her that he had ingested six to twelve beers on July 5, 2005; he was shooting coyotes; and that he was not afraid that the car would hit him" because this testimony was in contravention of Rule 24.02(d)(5) as well as his various constitutional rights. Appellant maintains the aforementioned evidence provided by Ms. Givens' testimony "concerned statements made in the course of a guilty plea that was later withdrawn, which is specifically excluded by the rule but provided the [S]tate with the only possible alternative to self-defense as an explanation for [A]ppellant's actions, contradicting [A]ppellant's defense and resulting in a miscarriage of justice."

Appellant admits he failed to include this allegation of error in his motion for new trial such that he requests plain error review from this Court. *See* Rule 30.20.[4] Plain error review involves a two-step process. *State v. Stallings*, 158 S.W.3d 310, 315 (Mo.App.2005). "First, we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id.* "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *State v. Johnson*, 182 S.W.3d 667, 670 (Mo. App.2005). "Absent a finding of facial error, [this Court] should decline its discretion to review the claim." *Stallings*, 158 S.W.3d at 315. "If plain error is found, we proceed to the second step to consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *Id.* at 315–16. " 'The plain error rule should be used sparingly and does not justify a review of every trial error that

has not been properly preserved for appellate review.' " *State v. Myszka*, 963 S.W.2d 19, 24 (Mo.App.1998) (quoting *State v. Phillips*, 939 S.W.2d 502, 505–06 (Mo.App.1997)).

Rule 24.02(d)(5) provides:

[e]xcept as otherwise provided in this Rule 24.02(d)5, evidence of a plea of guilty, later withdrawn, or of an offer to plead guilty to the crime charged or of any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, or an offer to plead guilty to the crime charged or any other crime is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

The State concedes and our independent research fails to show case law that provides any guidance on the issue of whether statements in an SAR may be considered to have been made in connection with a guilty plea. However, "Rule 24.02(d)(5) precludes [the] use at trial of statements made by a defendant during a plea if that plea was withdrawn, for the plea has thereby been rendered involuntary and inadmissible as evidence of guilt." *State v. Juarez*, 26 S.W.3d 346, 355 (Mo.App.2000) (emphasis omitted).

[I]t makes no difference whether the utterances of the accused [are related to] a plea of guilty later withdrawn by leave of court, or an attempt to enter a plea of guilty upon certain promises having been made by an official. The same

---

4. All rule references are to Missouri Rules of Court (2010).

principles of law holding them to be inadmissible in the trial of the case apply. This is so because the promise of leniency, if relied upon by the accused, renders the [statements] involuntary in that it undercuts the accused's waiver of trial by a jury and privilege against self-incrimination, both of which are waived by a plea of guilty.

*State v. Hoopes,* 534 S.W.2d 26, 35 (Mo. 1976). As stated in *State v. Abel,* 320 Mo. 445, 8 S.W.2d 55, 56 (1928),

> [i]f [the defendant's statements to an investigator prior to the withdrawal of his guilty plea] had been an offer to compromise a civil action, it would have been privileged. We can see no good reason why it should not be so considered in a criminal action. The offer to plead guilty should have been accepted and sentence passed upon it, or it should have been rejected, and 'never have been heard of again.' The prosecuting attorney should not have been allowed to reject the conditional offer and afterwards use it against the defendant at the trial.

Although the State was very careful not to identify how Ms. Givens obtained the information that was the basis for her testimony, it still appears that Appellant's statements to her are barred by the prohibitions of Rule 24.02(d)(5) in that the statements were made as a necessary part of the guilty plea process.[5] When that guilty plea was rejected by the plea court and withdrawn, those statements made by Appellant to Ms. Givens, like those in *Abel,* 8 S.W.2d at 56, should " 'never have been heard of again.' " " 'The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty.' " *State v. Danneman,* 708 S.W.2d 741, 743 (Mo.App.1986) (quoting *Kercheval v. U.S.,* 274 U.S. 220, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927)). Ms. Givens' testimony should have been rejected by the trial court under Rule 24.02(d)(5).

■ However, "[w]here, as here, the request for plain error review comes in a direct appeal, we are mindful that plain error cannot serve as a basis for granting Appellant a new trial, as he requests, unless the error was 'outcome determinative.' " *State v. Shaffer,* 251 S.W.3d 356, 358 (Mo.App.2008) (quoting *Deck v. State,* 68 S.W.3d 418, 427 (Mo. banc 2002)). In the absence of an error of this magnitude, no manifest injustice or miscarriage of justice exists and this Court will decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20. *Id.* Here, Appellant had the burden of proving the introduction of Ms. Givens' testimony was so prejudicial that it was outcome determinative. *See State v. Smith,* 293 S.W.3d 149, 151 (Mo.App.2009).

■ In our review we initially observe that Ms. Givens' testimony relating to Appellant's beer drinking was also referenced by Appellant in his own cross-examination testimony where he testified to drinking another six pack of beer while waiting for police. This testimony by Appellant was consistent with Ms. Givens' acknowledgment that Appellant had reported to her that he had consumed approximately "six to 12 beers" that evening. It is difficult to discern how Appellant was prejudiced by this testimony due to the similarity of what Appellant had said on cross-examination and what Ms. Givens reported he said to her. Furthermore, despite having previously told Ms. Givens he had been shooting at coyotes that evening, Appellant freely admitted under cross-examination that

---

5. We are aware, of course, that "[m]uch evidence that is not admissible at trial may be included in a pre-sentence investigation report or otherwise be considered by the judge during sentencing." *Juarez,* 26 S.W.3d at 356.

he was not, in fact, shooting at coyotes on the evening in question but, rather, shooting the gun down the gulley because he was "ticked off." More importantly, while Ms. Givens denied Appellant expressly told her that he "shot" because the driver of the car was trying to run over him, she did testify, consistent with Appellant's prior trial testimony, that Appellant told her that the car quickly pulled into his driveway and he believed he was acting in self-defense. Any contradictions, if any, between the testimony of Appellant and Ms. Givens were to be weighed and assessed by the jury as the trier-of-fact. "Credibility of any witness, including the complaining witness, is a matter for determination by the jury." *State v. Marley,* 257 S.W.3d 198, 200 (Mo.App.2008). Given the foregoing, it is our view that the errors in the present matter were not so prejudicial as to be outcome determinative. Appellant has failed to meet his burden of proving there was error which was "evident, obvious, and clear...." *Johnson,* 182 S.W.3d at 670. We deny plain error review. Point denied.

The judgment and sentence of the trial court are affirmed.