STATE of Missouri, Respondent,

v.

Michael L. SCOTT, Appellant.

No. WD 40669.

Missouri Court of Appeals,
Western District.

March 21, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 1989.

James L. McMullin, Kansas City, for appellant.

William L. Webster, Atty. Gen., Daryl R. Hylton, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Following a bench trial, Michael L. Scott was convicted of second degree murder, § 565.021.1, RSMo 1986, first degree assault, § 565.050, and two counts of armed criminal action, § 571.015, RSMo 1986. All of the charges arose out of a shooting that occurred at the Birch Tree Lounge in Kansas City, Missouri during the early morning hours on October 17, 1987. For the killing he received twenty years, for the wounding of a bystander five years, and five years for each count of armed criminal action.

In his four points on appeal Scott claims the trial court erred by: 1) failing to sus-

tain his motion for judgment of acquittal at the close of all evidence because *the state's evidence* established that Scott acted in self-defense; 2) failing to sustain his motion for judgment of acquittal at the close of all evidence because *the evidence as a whole* established that Scott acted in self-defense; 3) failing to sustain his motion for judgment of acquittal at the close of all evidence because the state's evidence failed to establish that the defendant knew, shot, or intended to shoot one of the victims; and 4) finding him guilty of second degree murder, because the evidence established at most manslaughter, as the victim was the one who started the confrontation and forced the final confrontation.

"When reviewing to determine whether evidence is sufficient to support a charge, this court shall accept as true all the evidence favorable to the state, including all favorable inferences drawn from the evidence. This court should disregard all evidence and inferences to the contrary." *State v. Sanders,* 741 S.W.2d 739, 741 (Mo. App.1987).

■ When the trial court denied the defendant's motion for judgment of acquittal at the close of the state's evidence, and Scott chose to introduce evidence on his own behalf, he effectively insured that the issue of submissibility would be determined on the basis of all the evidence, including so much of his own as favored the state. *State v. Turin,* 723 S.W.2d 461, 463 (Mo. App.1986). Therefore, point one is denied.

As for the remaining points on appeal, considering all the evidence favorable to the state and all reasonable inferences drawn from the evidence, it is clear that the court has sufficient evidence upon which to base its verdict.

The evidence most favorable to the state showed that on Saturday, October 17, 1987, Scott was at the Birch Tree Lounge. The Lounge had a policy of searching its patrons for weapons before allowing them to enter the premises. Regular customers were allowed in without being searched. Scott was a regular customer. The lounge had over 180 patrons on the night in question.

Mark Evans entered the Birch Tree that evening with his girlfriend (Atiya), his brother (Peter) and a friend (Abraham). All those people were searched when they entered the Birch Tree. Eventually, the four people were joined by some friends (Neville, Donald, and Dizzy). The group of people sat at a corner table at the east end of the lounge. Another friend of Evans, Sala, sat nearby. Robin McGowan was also at the Birch Tree that evening with two of her friends.

At some point during the evening, Atiya left the group. After several minutes she returned and said to her friends that "This guy's calling you, you know, us Jamaican pussies and you a Jamaican pussy." Evans, Atiya, Sala and Dizzy set out to find the person who had made the comment. Evans and his entourage confronted Scott and words were exchanged. Evans and Scott eventually confronted each other face to face. The two began to scream at each other. Scott then backed up and pulled a gun and shot Evans in the head. Evans was not holding anything when he was shot. Scott then fired a shot to the east, in the direction where Evans' group had been sitting earlier. There was evidence Scott seemed to know at whom he was shooting. The bullet hit McGowan, a bystander. Scott then fled the scene. Evans was dead by the time the police arrived. McGowan was being treated.

Scott's version of the evening was not believed by the judge. He produced several witnesses at trial who testified on his behalf. One witness testified that Scott was searched when he entered the Birch Tree. Another witness claimed that she saw something in Evans' hand (perhaps a gun), at the time of the fight, but she could not identify the object. Another witness gave a more complete version of what happened on the night of the shooting. The witness claimed that it was Evans who brandished a weapon and that it was only after a struggle that Scott gained possession of it. The witness then testified that Evans picked up a chair and rushed Scott. It was only then that Scott discharged the weapon.

Scott's testimony was much the same. He said the victim followed and harassed

him until the shooting. He claimed that after he gained possession of the weapon he fired once towards the ground to scare the Jamaicans. It was only after Evans grabbed the chair and was getting ready to attack, that Scott decided to fire in self-defense. Scott claimed that he only fired two shots in all. Moreover, he claimed to have heard someone say as he was leaving the door, "There's somebody shooting at you."

The judge obviously believed the state's version of what led to the killing of Evans. Given that version, it is clear that the defendant did not act in self-defense.

This court in *State v. Stinson*, 714 S.W.2d 839 (Mo.App.1986), outlined the elements necessary to justify the use of deadly force:

(1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself for an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take life.

*Id.* at 840 (citing *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984). The evidence established that the parties were merely arguing, and that the victim did nothing which made it necessary for the defender to kill in order to save himself from immediate danger of serious injury or death. The point is therefore denied.

Next the defendant challenges the sufficiency of the evidence on the first degree assault charge in connection with the shooting of McGowan. Scott claims that there was insufficient evidence put forth that the defendant knew McGowan, shot, or intended to shoot her. Section 565.050, RSMo 1986 covers first degree assault:

1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.

2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

There was evidence that Scott deliberately turned towards the east (where Evans' group had been sitting) and discharged the weapon. It could be inferred from Scott's conduct that he intended to cause harm to someone with Evans. Scott's intent to harm that person would be transferred to McGowan for purposes of fixing the grade of the offense. *State v. Arellano*, 736 S.W.2d 432, 434 (Mo.App.1987). McGowan had her gall bladder and part of her colon removed as a result of the gunshot wounds. Therefore, the third point is denied.

Finally, Scott claims that at most he was guilty of manslaughter in connection with the death of Evans. Second degree murder is defined by § 565.021.1(1), RSMo 1986 as knowingly causing the death of another person. Under § 565.023.1(1) second degree murder is reduced to voluntary manslaughter where a person causes the death of another person under the influence of sudden passion arising from adequate cause. In this case, there was no such adequate cause.

The judgment is affirmed.

All concur.