Louis Zerome MOSBY,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 27141.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 31, 2007.

Kent Denzel, Asst. Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

Louis Mosby (Mosby) appeals from an order denying his amended Rule 24.035 motion to set aside or vacate his pleas of guilty to committing the offenses of assault in the first degree and armed criminal action (ACA).[1] In Mosby's amended motion, he alleged that: (1) his guilty plea to the first-degree assault charge was involuntary because the record contained an insufficient factual basis to establish the mental element necessary to the commission of that offense; and (2) he was ordered to serve his ACA sentence consecutively because the court was acting under the mistaken belief that it was required to do so. The motion court denied relief, and this appeal followed. This Court affirms.

## I. Factual and Procedural Background

In September 2001, Mosby was charged in a three-count information with committing assault in the first degree (Count I), robbery in the first degree (Count II) and ACA (Count III). See §§ 565.050, 569.020, 571.015.[2] All three charges arose out of an armed robbery of a locksmith store during which the owner, David Holmes (Holmes), was shot with a handgun. Insofar as relevant here, Count I alleged that "on or about March 13, 2001 ... [Mosby] attempted to kill or cause serious physical injury to [Holmes] by shooting him, and in

1. All references to rules are to the Missouri Court Rules (2007).

2. All references to statutes are to RSMo (2000).

the course thereof, inflicted serious physical injury to [Holmes]. . . ."

On April 9, 2002, the State and Mosby entered into a plea agreement. He agreed to enter an open plea of guilty to the charges of first-degree assault and ACA. In return, the State agreed to dismiss the first-degree robbery charge. Mosby and his plea attorney each executed a guilty plea petition. It stated, in pertinent part, as follows:

5. I know that the Court must be satisfied that there is a factual basis for a PLEA OF GUILTY before my plea can be accepted. I represent to the Court that I did the following acts in connection with the charge made against me: *Caused serious physical injury to [Holmes] by shooting him with a deadly weapon in Scott Co. on March 13, 2001*. . . .

16. I know that the Court will not permit anyone to plead GUILTY who is innocent, and with that in mind, and because I AM GUILTY, I wish to plead GUILTY and respectfully request the Court to accept my PLEA OF GUILTY.

(Underlining in original with hand-written entries.) That same day, Mosby appeared in court for his plea hearing. Mosby stated that he was able to understand the petition, and he was aware of the ranges of punishment for the crimes of first-degree assault and ACA. He also acknowledged that, by pleading guilty, he would be giving up his rights to have a trial, confront the witnesses against him and present evidence on his own behalf. The following colloquy then took place:

[THE COURT] Listen to the facts the prosecutor says they would prove if we had a trial, and if they are different than the facts that you remember, let me know.

[Prosecutor]: Judge, the evidence would be on the evening of March 13, 2001, this defendant entered the Security Locksmith located at 133 West Malone Street in Sikeston, Missouri. When he entered that residence, he was armed with a deadly weapon, being a hand gun. He approached the owner of the locksmith store, Mr. David Holmes, and demanded money from Mr. Holmes with a pistol in his hand. At one point the defendant sat the pistol on the counter top while Mr. Holmes was collecting money.

The defendant began counting the money on the floor with the pistol out of his hand. The victim, Mr. David Holmes, made an attempt to acquire the pistol from the defendant and a struggle ensued between the defendant and Mr. Holmes. At one time the defendant discharged the gun into Mr. Holmes' upper chest shoulder area. At which point the defendant stood above Mr. Homes and attempted to shoot Mr. Holmes three additional times with the pistol. However, the pistol jammed and did not fire those three additional times. At that point the defendant grabbed Mr. Holmes by the the [sic] head and hair and dragged him to a locked safe that was locked in the safe and demanded more money from Mr. Holmes. As Mr. Holmes was bleeding, he explained that he could not see because his glasses had been knocked off, and this defendant began striking Mr. Holmes in the head with the pistol. The safe was opened and more money gained and the defendant left with the amount of money he had gained from Mr. Holmes, left 133 West Malone heading towards his apartment building where he was living.

Mr. Holmes in desperation dialed 911 and was in a semiconscious state when the ambulance arrived and took him to the Missouri Delta Hospital. At Missouri Delta Hospital Mr. Holmes was operated on by Dr. Helfrich. At which

point he flat lined approximately three times on the operating table and eventually recovered from the gun shot wound and regained consciousness several days later. Upon regaining consciousness he did speak to Detective Keith Lawson and identified the defendant as the one who had robbed and assaulted him.

The night of the assault though, Detective Mike Williams responded to the Missouri Delta Medical Center to check on the status of the victim, Mr. Holmes, and make contact with this defendant at Missouri Delta Hospital. The defendant did have his hand wrapped in a bandage, and it was believed he actually shot himself in the process of shooting Mr. Holmes.

At the locksmith store there were numerous amounts of money and blood soaked money leading towards his apartment building.

Detective Armour from the Department of Public Safety suspected Louis Mosby and made contact with Mrs. Mosby and consent to search the residence was given, and in the bathroom area several bloody towels were located in the bathroom and information was gained that this defendant may have went to another residence located on Ruth Street. Contact was made at that residence and additional blood was found at that residence and statements were obtained from Miss Johnson that Mosby indicated he had shot himself and was bleeding. Eventually Deputy Bobby Sullivan stopped a vehicle on Ruth Street where he was a passenger, and in the search of the vehicle found blood soaked money from the crime scene. The gun shot residue test was positive for this defendant handling a firearm. Mr. Mosby was taken into custody and after being read his Miranda Rights, gave a statement stating that he did participate and was the person who robbed David Holmes and was the person that shot David Holmes. Later that morning on March 14, Mr. Mosby gave a more detailed statement of the robbery and the assault and how it took place. Therefore, the State would be able to move [sic] that this defendant attempted to kill or cause serious physical injury to David Holmes by shooting him and in the course thereof, inflicted serious physical injury to David Holmes. This assault took place in Sikeston, Scott County, Missouri.

In regard to Count III, the defendant did commit the felony of assault in the first degree with the use, assistance and aid of a deadly weapon, with the pistol that was used to discharge the bullet that struck Mr. David Holmes.

THE COURT: Louis, is that basically what happened in this case?

THE DEFENDANT: No, sir.

THE COURT: What happened?

THE DEFENDANT: How the gun went off and a lot more stuff.

THE COURT: All right, you are saying that you didn't commit the assault in the first degree by attempting to kill or cause serious physical injury to David Holmes by shooting him and in the course thereof inflicted serious physical injury on David Holmes; you are saying that didn't happen?

THE DEFENDANT: Yes.

THE COURT: It did or did not?

THE DEFENDANT: It did not.

[DEFENSE COUNSEL]: It didn't happen like that.

THE DEFENDANT: I didn't shoot him.

THE COURT: I don't think you can plead to assault first if you didn't do it.

THE DEFENDANT: I just don't want to go to trial and lose it, so the best thing, I talked to my lawyer is—

DEFENDANT'S MOTHER: He's in a no-win situation. They say if he don't plead guilty today—

THE COURT: Off the record.

After a brief discussion off the record, the following additional colloquy took place:

THE DEFENDANT: I will take the plea, your Honor.

THE COURT: I have to find a factual basis for that or I have to make a finding under an Alford plea.

[PROSECUTOR]: Absolutely not, Judge. If he's claiming self-defense in this case, the State will not accept this plea and give him the benefit of dismissing robbery first. The State is ready for jury trial. The victim is ready to testify.

THE COURT: If you tell me that you did not attempt to kill or cause serious physical injury to David Holmes by shooting him and in the course thereof inflicted serious physical injury to David Holmes, I cannot accept a plea under Count I to the class A felony of assault in the first degree if it was an accidental shot or what you claim it to be. That is not what they have charged.

DEFENDANT'S MOTHER: I think what he's saying, they was wrestling with the gun, but the gun went off when he pulled the gun.

THE COURT: He pulled the gun?

THE MOTHER: When they was wrestling for the gun. David Holmes really shot himself. That's how he shot his finger too.

THE COURT: Who is holding the gun?

[PROSECUTOR]: The defendant was holding the gun. The State asks to set this for trial. Could we set this the last day of April?

THE DEFENDANT: Sir, is the plea off?

THE COURT: You can't make a factual basis for me to accept the plea. If you didn't shoot him, you didn't shoot him.

THE MOTHER: You asked him a question. He was giving you an answer.

THE DEFENDANT: Gun accidentally went off.

THE COURT: That's a defense to the charge.

DEFENDANT'S MOTHER: He's in a no-win situation. If he has a trial, he will get more time.

THE COURT: He can plea.

THE MOTHER: Yes, I try to shoot him, tried hard, tried hard.[3]

[PROSECUTOR]: Judge, I think this is an insult to David Holmes. He is a business owner in Scott County and to say when this defendant pulls a gun in his case in an effort to defend himself is responsible for shooting himself.

DEFENDANT'S MOTHER: He said he did that. He was just answering his question. I apologize if I upset you in

---

**3.** In Mosby's brief, he argues that his mother did make this statement, but she mistakenly used the pronoun "I" to describe who tried to do the shooting. The motion court made a specific finding that Mosby made the statement and that it was misattributed to the mother by the court reporter. After reviewing the entire record, the court's finding does not appear to be clearly erroneous. In any event, the controversy about the accuracy of the transcript is immaterial because Holmes appeared at the sentencing hearing. His testimony is described in more detail *infra*. Insofar as relevant here, Holmes testified that, after he was shot, he was on his hands and knees bleeding from a chest wound. While he was in that incapacitated state, Mosby pointed the pistol directly at Holmes and pulled the trigger several more times, but the gun had jammed and did not fire.

any kind of way. I apologize to the Court. Thank you.

THE COURT: So in Count I to the Class A felony of assault in the first degree committed on or about March 13, 2001, by attempting to kill or cause serious physical injury to David Holmes by shooting him and in the course thereof, inflicting serious injury to David Holmes, are you guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: In Count III to the unclassified felony of armed criminal action committed on or about March 13, 2001, in Scott County, State of Missouri, the defendant committed the felony of assault in the first degree as charged in Count I, all allegations of which are incorporated herein by reference, and the defendant committed the foregoing felony of assault in the first degree by, with and through the use, assistance and aid of a deadly weapon. Are you guilty or not guilty of that?

THE DEFENDANT: Guilty.

After hearing all of the above, the plea court determined that: (1) there was a factual basis to support Mosby's pleas of guilty to the charges of first-degree assault and ACA; (2) he was, in fact, guilty of those offenses; and (3) his pleas of guilty were made voluntarily with an understanding of the nature of the charges against him, the ranges of punishment and the consequences of his pleas.

On July 9, 2002, the court held a sentencing hearing. Holmes was called as a witness and gave the following testimony. On March 13, 2001, Mosby entered the store late in the evening armed with a handgun. He pointed the gun at Holmes and demanded money. Holmes opened the cash register and stepped back. Mosby came behind the counter and began removing the money. When he laid the gun on the floor so he could put the money in his pockets, Holmes reached for it. Mosby knocked Holmes up against a door jamb, and he lost consciousness. When he awoke, he was on his hands and knees bleeding from a gunshot wound to his chest. Mosby pointed the gun at Holmes and tried to shoot him again by pulling the trigger several times, but the weapon did not fire. Mosby then dragged Holmes to a nearby safe and told him to open it. When Holmes said there was no money in it, he was hit on the head with the gun. He opened the safe, and Mosby then left the store. Holmes' injury was so serious that his heart stopped beating twice, and he would have died without resuscitation by physicians.

After the presentation of evidence, the prosecutor discussed the State's sentencing requests. The following colloquy then occurred:

[PROSECUTOR]: The State would ask that Mr. Mosby be sentenced to life in prison on Count I and Count III, and the community demands that the sentences run consecutive....

THE COURT: Isn't ACA consecutive to any other sentence any way? Don't you have to serve ACA first?

[PROSECUTOR]: I am not sure, Judge. I am just asking that it be consecutive on the record.

The court decided to sentence Mosby to life imprisonment on Count I and ten years on Count III because, "being in DYS for ten and a half years and then shooting someone else, and this is the second person you shot, I couldn't consider anything less than that." Thereafter, the court stated that "[i]t is my understanding that ACA is served consecutive with the other sentence. I understand you have to serve ACA first. If not, then the order will read he will serve consecutively, but it is my understanding you have to do that first

any way." The judgment stated that the Mosby's sentences for first-degree assault and ACA were to be served consecutively to each other and to another sentence that Mosby was already serving.

Thereafter, Mosby filed a timely *pro se* motion for post-conviction relief pursuant to Rule 24.035. Appointed counsel filed an amended motion challenging the factual basis for Mosby's plea of guilty to first-degree assault and the sentencing court's decision to run the term of imprisonment for ACA consecutively to the other sentences. The motion court denied relief without an evidentiary hearing. With respect to the first allegation, the motion court determined that it was refuted by the record because the necessary intent to kill or cause serious physical injury could be inferred from Mosby's actions in actually shooting Holmes once and then unsuccessfully attempting to shoot him several more times. With respect to the second allegation, the court determined that the sentencing judge intended to impose consecutive sentences whether or not that was required for an ACA conviction. This appeal followed.

## II. Standard of Review

Mosby bore the burden of proving his grounds for post-conviction relief by a preponderance of the evidence. Rule 24.035(i); *Harris v. State*, 184 S.W.3d 205, 209 (Mo.App.2006). Our review is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Morehead v. State*, 145 S.W.3d 922, 927 (Mo.App.2004). We presume the motion court's findings and conclusions are correct. *Wilson v. State*, 813 S.W.2d 833, 835

(Mo. banc 1991). Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *Id.*

■ In this case, the motion court denied relief without an evidentiary hearing. "A motion court is not required to grant an evidentiary hearing on a claim for post-conviction relief unless: (1) the movant pleads facts that if true would warrant relief; and, (2) the facts alleged are not refuted by the record; and, (3) the matter complained of resulted in prejudice to the movant." *Dorsey v. State*, 115 S.W.3d 842, 844–45 (Mo. banc 2003); *Hughes v. State*, 204 S.W.3d 376, 380 (Mo.App.2006). If the files and records of the case conclusively show that Mosby is not entitled to any relief, no evidentiary hearing is required. Rule 24.035(h); *State v. Brooks*, 960 S.W.2d 479, 497 (Mo. banc 1997); *Hughes*, 204 S.W.3d at 380.[4]

## III. Discussion and Decision

■ In Mosby's first point, he contends the motion court clearly erred in refusing to set aside his guilty plea to the first-degree assault charge. Mosby argues that his guilty plea was involuntary and unknowing due to the lack of an adequate factual basis to support the plea. After reviewing the entire record, we do not find the motion court's ruling to be clearly erroneous.

■ Rule 24.02(e) provides that a trial court "shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." This rule is not constitutionally based. *Myers v. State*, 223 S.W.3d 165, 167 (Mo.App.

---

4. On appeal, Mosby does not contend that he should have been granted an evidentiary hearing. His amended motion alleged that he would rely upon the underlying criminal file and the transcript to establish his claims. The motion court reviewed these materials before denying relief.

2006). Instead, "its purpose is to aid in the constitutionally required determination that a defendant enter his or her plea of guilty intelligently and voluntarily." *Price v. State,* 137 S.W.3d 538, 541 (Mo.App. 2004); *see Sales v. State,* 700 S.W.2d 131, 132–33 (Mo.App.1985). The factual basis for a guilty plea can be established from anything that appears clearly on the record at any time before judgment is entered, including facts adduced at the sentencing hearing. *Price,* 137 S.W.3d at 542.

■■■ As noted above, Mosby pled guilty to first-degree assault. *See* § 565.050. A person commits this crime "if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." § 565.050.1. If the actor inflicts serious physical injury on the victim in the course of the assault, this crime is a class A felony. § 565.050.2. To prove this offense, there must be evidence of a specific intent on the part of the actor to cause serious physical injury. *State v. Chambers,* 998 S.W.2d 85, 90 (Mo.App. 1999). Nevertheless, "[i]ntent is generally not susceptible of direct evidentiary proof and may be based upon circumstantial evidence or inferred from surrounding facts." *State v. Johnson,* 948 S.W.2d 161, 166 (Mo. App.1997). Thus, a defendant's mental state may be inferred from his conduct before, during and after the act. *State ex rel. Verweire v. Moore,* 211 S.W.3d 89, 92 (Mo. banc 2006); *State v. Immekus,* 28 S.W.3d 421, 426 (Mo.App.2000). Additionally, the requisite mental state necessary to support a conviction under § 565.050 can be inferred from the use of deadly weapons or dangerous instruments on vital areas of a victim's body or conduct that would tend to cause death or serious physical injury. *See State v. Booyer,* 87 S.W.3d 926, 930–31 (Mo.App.2002); *State v. Moore,* 1 S.W.3d 586, 589 (Mo.App.1999).

Before judgment was entered, the plea court was aware of the following facts. When Mosby entered the store, he was armed with a deadly weapon. According to Holmes' testimony at the sentencing hearing, he was knocked against a door jam and rendered unconscious when he reached for Mosby's gun. When Holmes awoke, he was bleeding from a wound in his chest. From this testimony, the plea court could reasonably infer that Holmes had been shot while he was unconscious. The reasonableness of this inference is amply supported by Holmes' further testimony that, while he was on his hands and knees on the floor in an incapacitated state, Mosby pointed the gun at Holmes and pulled the trigger several more times. Holmes was spared death or further serious physical injury only because the gun had jammed. He sustained further injury when he was pistol-whipped about the head by Mosby in an attempt to obtain more money. Based upon the foregoing facts and reasonable inferences, the plea court determined that there was a factual basis for Mosby's plea.

The motion court reached the same conclusion. We do not find that conclusion to be clearly erroneous. Based upon Mosby's actions before, during and after the shooting of Holmes, the facts and reasonable inferences were sufficient to establish that Mosby had a specific intent to cause serious physical injury to Holmes and, in the course thereof, did inflict such injury on him. Therefore, these facts and inferences provided a factual basis for Mosby's plea of guilty to first-degree assault in violation of § 565.050. *See State v. Scott,* 769 S.W.2d 149, 151 (Mo.App.1989) (defendant's act of pointing a gun at a group of people and shooting the victim was sufficient to prove the intent necessary to support a conviction pursuant to § 565.050); *State v. Unverzagt,* 721 S.W.2d 786, 788 (Mo.App. 1986) (defendant's act of pointing what he

believed to be a loaded revolver at another person four feet away and pulling the trigger two or three times was sufficient to prove the intent necessary to support a conviction pursuant to § 565.050); *State v. Young,* 570 S.W.2d 324, 326 (Mo.App.1978) (defendant's act of striking victim three times in the head with a pistol was sufficient to prove an intent to cause death or great bodily harm).

*England v. State,* 85 S.W.3d 103 (Mo. App.2002), is the primary case cited by Mosby to support his argument that there was no factual basis for his plea, but that case is factually distinguishable. There, the defendant was charged only with attempting to kill the victim in violation of § 565.050. To prove that charge, the State had to present evidence of "the defendant's specific intent to cause the victim's death." *Id.* at 107. When the defendant pled guilty to the first-degree assault charge, he testified that he shot randomly at the house without knowing for certain whether anyone was inside. *Id.* at 109. The victim was grazed in the head by one of the bullets. *Id.* at 105. The western district of this Court concluded that defendant's admissions at the plea hearing only showed reckless behavior and did not establish that he acted with the specific intent to cause the victim's death. *Id.* at 109. In the case at bar, the facts before the plea court were markedly different. Mosby shot and seriously injured an unconscious Holmes. While he was incapacitated on the floor, Mosby pointed the pistol at Holmes and attempted to shoot him several more times. Thereafter, Mosby pistol-whipped Holmes, which was another act that could cause death or serious physical injury. This uninterrupted course of events demonstrates without dispute that Mosby attempted to kill a known victim and inflicted serious physical injury on that person during the course of the assault. Therefore, *England* is inapposite.

Mosby also points to his equivocation during the plea hearing as proof that he lacked the requisite intent to be guilty of first-degree assault, but we find that assertion unpersuasive. A similar argument was raised in *Pippenger v. State,* 794 S.W.2d 717 (Mo.App.1990). There, the movant first denied that he "willfully" failed to appear while on bond in a rape case. *Id.* at 719–20. The trial court carefully and repeatedly went over the elements of the offense charged, particularly the requirement that the State had to prove that he willfully failed to appear. "[T]he nature of the charge, especially the element of willfulness, was carefully explained to movant. He thereupon admitted his guilt. A factual basis for the guilty plea was clearly established." *Id.* at 721. This Court held that the defendant's initial equivocation did not render his plea involuntary:

> For a guilty plea to be valid, it is not necessary that the movant admit to, or even believe, the veracity of the elements of the charges against him; all that is required is that the plea be knowing and voluntary. "A guilty plea is not involuntary, even though the accused maintains his innocence, so long as the plea represents a voluntary choice of alternatives available to him at the time, according to his own best interests."

*Id.* (citations omitted); *see Trehan v. State,* 872 S.W.2d 156, 160 (Mo.App.1994) (movant understood he was pleading guilty to receiving stolen property, even though he initially denied that he knew property was stolen).

■ The motion court concluded that Mosby knowingly and voluntarily pled guilty to first-degree assault. The court's conclusion is not clearly erroneous. After reviewing the entire record, it is evident that Mosby was very desirous of entering

a plea of guilty to avoid the risks of trial. The plea court carefully explained to Mosby that his guilty plea could not be accepted if he did not intentionally shoot Holmes. The colloquy among the plea court, the attorneys and Mosby demonstrates that he fully understood the nature of the charge against him before entering his guilty plea, which represented "a voluntary choice of alternatives available to him at the time, according to his own best interests." *Turner v. State*, 755 S.W.2d 409, 410 (Mo.App. 1988); *Pippenger*, 794 S.W.2d at 721. Point I is denied.

▮▮▮ The second point on appeal concerns the plea court's decision to require that Mosby's ACA sentence be served consecutively. As a general proposition, a trial court has the discretionary authority to determine whether multiple sentences of imprisonment are to be served consecutively or concurrently. *Hight v. State*, 841 S.W.2d 278, 283 (Mo.App.1992); *Johnson v. State*, 607 S.W.2d 808, 809 (Mo.App. 1980); § 558.026.1. In pertinent part, § 571.015.1 states that "[t]he punishment imposed pursuant to this subsection shall be *in addition to* any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." *Id.* (italics added). In *State v. Treadway*, 558 S.W.2d 646, 653 (Mo. banc 1977), our Supreme Court held that the phrase, "in addition to," did not require that a sentence imposed pursuant to § 571.015.1 run consecutively to the sentence for the underlying felony.[5] In that case, the trial court had erroneously believed it was required to impose a consecutive sentence for an ACA conviction. *Id.* at 652. Therefore, the case was remanded for resentencing so the trial court could exercise its

judicial discretion in deciding whether the two sentences should be served concurrently or consecutively. *Id.* at 653. In several subsequent cases, resentencing has been ordered when the trial court acted under the mistaken belief that consecutive sentencing was mandated by § 571.015.1. *See, e.g., State v. Freeman*, 212 S.W.3d 173, 177 (Mo.App.2007); *Roller v. State*, 84 S.W.3d 525, 528 (Mo.App.2002); *State v. Taylor*, 67 S.W.3d 713, 716 (Mo.App.2002); *State v. Olney*, 954 S.W.2d 698, 701 (Mo. App.1997).

In the case at bar, Mosby contends the motion court clearly erred in denying relief because the plea court mistakenly believed that it did not have discretion to run the sentences for first-degree assault and ACA concurrently. After reviewing the transcript, however, the motion court concluded that Mosby's consecutive sentence for his ACA conviction did not result from any mistaken belief by the plea court:

> It is apparent to this court, that the trial court was going to sentence [Mosby] to consecutive time regardless of what his understanding was regarding how sentences on armed criminal action apply to a defendant. The trial court referred to [Mosby's] actions in this case being his second shooting. The trial court was merely trying to lessen the emotional impact of his decision by referring to another reason for consecutive time before giving consecutive time to [Mosby] for his criminal act.

In our view, this conclusion is not clearly erroneous because it is supported by the following facts. First, the prosecutor initially asked for consecutive sentences based upon "community demands" for that outcome, rather than any misinterpreta-

---

**5.** *Treadway* was overruled on other grounds in *Sours v. State*, 593 S.W.2d 208, 210 (Mo. banc 1980).

tion of the law. Second, the plea court's question to the prosecutor on this subject indicates the judge did not know whether a consecutive sentence was required. Third, the prosecutor did not misstate the law on the issue in his response. Instead, he made it clear that he was asking on the record for consecutive sentences, regardless of whether or not such a result was mandatory. Fourth, the plea court knew Mosby was already serving another sentence for shooting someone other than Holmes and decided, in the exercise of its discretion, to make the first-degree assault and ACA sentences run consecutively to the pre-existing sentence. That decision cannot be attributed to any misunderstanding of the law by the plea court. Finally, the plea court made it plain that it intended to impose consecutive sentences, regardless of whether or not that outcome was compelled by law, when the judge made this statement during sentencing:

> It is my understanding that ACA is served consecutive with the other sentence. I understand you have to serve ACA first. *If not, then the order will read he will serve consecutively,* but it is my understanding you have to do that first any way.

(Italics added.) Point II is denied. After reviewing the entire record, we are not left with a definite and firm belief that a mistake has been made. *Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991); *Mendez v. State,* 180 S.W.3d 75, 79 (Mo.App.2005).

The motion court's order denying post-conviction relief is affirmed.

BARNEY and LYNCH, JJ., Concur.