STATE of Missouri, Respondent,

v.

Larry J. CASTOE, Appellant.

No. SD 31117.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 27, 2012.

Donald R. Cooley, Springfield, for Appellant.

Chris Koster, Atty. Gen. and Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Larry J. Castoe ("Appellant") appeals his conviction by the trial court for one count of the class A felony of assault in the first degree, a violation of section 565.050, and one count of the unclassified felony of armed criminal action, a violation of section 571.015.[1] Appellant was sentenced by the trial court to ten years imprisonment on the assault count and three years on the armed criminal action count with the sentences to run concurrently. We affirm the judgment of the trial court.

Viewing the evidence in light most favorable to the trial court's judgment, *State v. Manley*, 223 S.W.3d 887, 889 (Mo.App. 2007), the record reveals Appellant and Clarence Routh ("Victim") had been acquaintances and business associates for a number of years prior to the events at issue here.[2] At some point in time in April or May of 2007 the parties had a falling out and Victim stopped payment on a $2,000.00 check that had been issued to Appellant. Appellant responded by making numerous threatening phone calls to Victim's home in which he threatened to kill Victim and his family. Several months later, on June 21, 2007, the parties ran into

---

**1.** Unless otherwise stated, all statutory references are to RSMo 2000.

**2.** At the time of this incident Victim was 37 years old and Appellant was 62 years old.

each other at a bank and Victim told Appellant that "if he ever threatened [Victim's] family again that [Victim] would whip his ass." At that time, Victim owed Appellant's wife $300.00 for helping Victim paint a house in Branson.

The following afternoon, on June 22, 2007, Victim went to Jersey's Sports Bar along with his step-daughter, Alayna Lowery ("Ms. Lowery"), and a friend. After arriving at the bar, Victim bought a round of drinks "for everybody" and took a seat with his friends at a table. Shortly thereafter, Appellant arrived and took a seat at the bar. A few minutes later, Victim "noticed [Appellant] at the bar, and [Victim] went over to give him some money for his wife. [Victim] handed it to [Appellant] and [Appellant] threw it in the floor." Appellant then said, "F-u, I don't want your money," so "[Victim] picked it back up and went back to [his] table." Victim "took two to three drinks off [his] drink ..." before Appellant approached his table and "said that he wanted to talk with [Victim] and that he [had] something for [Victim]."

The parties then went outside. Appellant got into his truck on the driver's side and closed the door. As Victim passed the driver's side door of Appellant's pickup Appellant "opened the door as [Victim] turned around and [Appellant] shot [him]" with a shotgun in the right side of his abdomen. Victim grabbed the barrel of the gun and a brief struggle ensued until Victim began to succumb to his injuries by falling to the ground. Victim asked Appellant not to shoot him again and Appellant replied by saying, "I am going to kill you, you son-of-a-bitch. I'm going to watch you bleed to death."

At that time, Ms. Lowery exited the bar. She saw Victim lying on the ground with "blood everywhere" and Appellant standing nearby holding a gun. Ms. Lowery shouted to Appellant, "Please don't do this.

Please don't do this, this is my stepdad. Please don't do this in front of me," and Appellant replied, "I'm going to kill him, I'm going to reload." A member of the band that was about to perform at the bar, Eli Stehlik, then exited the building and saw the scene in the parking lot. He called police and an ambulance. Donnie Treadmill and Stanley Beeson ("Mr. Beeson"), other bar patrons, also exited the building to see Victim lying on the ground bleeding and Appellant holding a gun. As Appellant paced back and forth, Mr. Beeson heard Appellant say something like "I want to make sure that he is dead." As the ambulance crew was arriving, one of the paramedics saw Appellant eject an empty shell from his shotgun and obtain another live shotgun shell. The police then arrived, drew their weapons, and ordered Appellant to put down his gun. After several repeated requests to disarm, Appellant eventually complied and was arrested. Appellant made no statements at the scene to police about whether the incident was self-defense or an accident. Appellant was taken to jail while Victim, who was in "critical" condition, was flown to a hospital. As a result of the shooting, Victim had several surgeries, has limited physical mobility, uses a wheelchair to get around, suffers from seizures, had to have a large portion of his intestines removed, and was unable to return to work in the construction trade.

Appellant was charged on December 12, 2007, with assault in the first degree and armed criminal action. A trial was held on October 6, 2010, at which Appellant waived his right to a trial by jury. A bench trial thereafter commenced at which Appellant testified that Victim intimidated him, that it was Victim who suggested they "go outside and take care of business," and that Victim shoved him as he was getting into his truck such that he grabbed his gun to

protect himself. He related that Victim grabbed the shotgun in the ensuing struggle and "it went off." He related that the shooting was a "terrible accident," but that he grabbed the gun from his truck out of fear that Victim "was going to beat [him] to death."

At the close of all the evidence, the trial court found Appellant guilty of the crimes charged. He was thereafter sentenced as set out above. This appeal by Appellant followed.

In his first point relied on Appellant maintains the trial court erred in denying his motions for judgment of acquittal and in finding him guilty of the charges against him. He asserts this was error as "the State's case did not present substantial evidence that [Appellant] committed the charged offenses by proof beyond a reasonable doubt to support a verdict by a rational trier of fact."

The standard of review in a bench-tried case is the same as in a jury-tried case. *State v. Johnson,* 81 S.W.3d 212, 215 (Mo.App.2002). We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense. *State v. Small,* 873 S.W.2d 895, 896 (Mo.App.1994). "When reviewing the sufficiency of the evidence, we review all evidence and inferences reasonably drawn from the evidence in the light most favorable to the verdict and disregard all contrary evidence and inferences." *State v. Berry,* 54 S.W.3d 668, 675 (Mo.App.2001). "The trier of fact determines the credibility of the witnesses, and may believe all, some or none of the testimony of a witness." *State v. Warren,* 141 S.W.3d 478, 490 (Mo.App.2004). "The function of the reviewing court is not to reweigh the evidence, but [only] to determine if the conviction is supported by sufficient evidence.'" *State v. McCleod,* 186 S.W.3d 439, 443 (Mo.App.2006) (quoting *State v. Mann,* 129 S.W.3d 462, 467 (Mo.App. 2004)). When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a "'super juror' with veto powers'...." *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998) (quoting *State v. Grim,* 854 S.W.2d 403, 414 (Mo. banc 1993)).

In order to convict Appellant of assault in the first degree, the State was required to prove Appellant "attempt[ed] to kill or knowingly cause[d] or attempt[ed] to cause serious physical injury to [Victim]." § 565.050. Appellant herein urges there was insufficient evidence to prove he "knowingly caused" the injuries suffered by Victim. To prove this offense, there must be evidence of a specific intent on the part of the actor to cause serious physical injury. *State v. Chambers,* 998 S.W.2d 85, 90 (Mo.App.1999). Nevertheless, "'[i]ntent is generally not susceptible of direct evidentiary proof and may be based upon circumstantial evidence or inferred from surrounding facts.'" *Mosby v. State,* 236 S.W.3d 670, 677 (Mo.App. 2007) (quoting *State v. Johnson,* 948 S.W.2d 161, 166 (Mo.App.1997)). "Thus, a defendant's mental state may be inferred from his conduct before, during and after the act." *Id.*; *see also State v. Immekus,* 28 S.W.3d 421, 426 (Mo.App.2000).

Here, Victim testified that Appellant, who had previously threatened Victim's life, refused his offer of payment while they were inside the bar and cursed at him at that time. Victim and others detailed the fact that Appellant approached Victim's table at the bar to speak with him and then they both went outside. Victim testified that once they were outside Appellant procured a firearm from his

truck, Appellant shot him, and then told him he was "going to kill him" and "watch [him] bleed to death." Ms. Lowery testified that she appealed to Appellant to spare Victim's life and that Appellant told her he was going to reload his gun and kill Victim. Three separate bar patrons observed Appellant pacing back and forth with his weapon while Victim laid on the ground bleeding and Mr. Beeson testified he heard Appellant say he wanted "to make sure that [Victim was] dead." A member of the ambulance crew also reported seeing Appellant emptying the spent shell and getting another shell to put in the gun. Appellant did not immediately surrender to law enforcement authorities and made no claim at that time relating to accident or self-defense. Accordingly, from the foregoing facts, a trier of fact could infer that Appellant "knowingly cause[d] . . . serious physical injury to [Victim]." § 565.050.

■ Additionally, we note that "the requisite mental state necessary to support a conviction under [section] 565.050 can be inferred from the use of deadly weapons or dangerous instruments on vital areas of a victim's body or conduct that would tend to cause death or serious physical injury." *Mosby,* 236 S.W.3d at 677; *see also State v. Booyer,* 87 S.W.3d 926, 930–31 (Mo.App. 2002). Appellant shot Victim at extremely close range in his torso. This fact lends further credence to the inference that Appellant acted knowingly. Additionally, it is not lost on this Court that the main thrust of Appellant's argument in this point relied on is that Appellant's testimony, which was self-serving and contrary to that offered by other witnesses, was completely overlooked by the trial court and given no credence. As stated above, it is not the province of this Court to determine the credibility of the witnesses, *Warren,* 141

S.W.3d at 490, or to reweigh the evidence. *McCleod,* 186 S.W.3d at 443. That is the role of the trial court and we defer to its determinations in such matters. *Id.* Viewing the evidence in a light most favorable to the judgment, we discern the trial court found Appellant's testimony was less credible than that offered by the State's witnesses. We do not quarrel with this determination. There was sufficient evidence to support Appellant's conviction in this matter. The trial court did not err in denying his motions for judgment of acquittal. Point I is denied.

In his second point relied on Appellant asserts the trial court committed plain error in "admitting numerous improper references by the [State] and witnesses to [Appellant's] post-Miranda silence and his failure to volunteer an exculpatory statement. . . ." He urges "such references are fundamental violations of [his] constitutional due process rights and his rights against self-incrimination under both the Fifth Amendment and the Missouri Constitution."

■ At trial, Appellant failed to object to any of the references or testimony asserted in this point relied on and he further failed to include this issue in his motion for new trial. In order to preserve an error to the admission of evidence at trial, it is necessary to both object to the evidence at the time it is introduced and to include the allegation of error in a motion for new trial. *State v. Green,* 307 S.W.3d 197, 200–01 (Mo.App.2010). Appellant did neither of these things. As such, he requests plain error review under Rule 30.20.[3]

■ Rule 30.20 authorizes an appellate court, in its discretion, to review for plain error affecting a defendant's substan-

---

**3.** All rule references are to Missouri Court Rules (2010).

tial rights "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *State v. Johnson*, 182 S.W.3d 667, 670 (Mo.App.2005). A defendant bears the burden of establishing that the trial court committed an evident, obvious and clear error and in proving the existence of a manifest injustice or a miscarriage of justice. *State v. Thurman*, 272 S.W.3d 489, 498 (Mo.App. 2008); *State v. Stanley*, 124 S.W.3d 70, 77 (Mo.App.2004). "A claim of plain error places a much greater burden on a defendant than an assertion of prejudicial error." *State v. Wright*, 216 S.W.3d 196, 199 (Mo.App.2007). "Plain error and prejudicial error are not synonymous terms, and mere allegations of error and prejudice will not suffice for reversal under plain error review." *Id.* Plain error can serve as the basis for granting relief on direct appeal only if the error was outcome determinative. *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006).

Due to his failure to object at trial, Appellant, in essence, argues under this point relied on that the trial court should have *sua sponte* taken some type of action to protect Appellant's constitutional rights during the trial. However, "Missouri courts [historically] reject invitations to criticize trial courts for declining to *sua sponte* take action on behalf of a party. . . ." *State v. D.W.N.*, 290 S.W.3d 814, 819 (Mo.App.2009) (quoting *State v. Roper*, 136 S.W.3d 891, 902 (Mo.App.2004)). "Indeed, such invitations have been rejected in all but the most unusual circumstances." *Roper*, 136 S.W.3d at 902. Such intervention in the present matter was unwarranted and unnecessary. This was a court-tried matter. In court-tried cases " 'we presume that the trial judge was not prej-

udiced by inadmissible evidence and was not influenced by it in reaching a judgment, unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence.' " *State v. Ernst*, 164 S.W.3d 70, 75 (Mo.App.2005) (quoting *State v. Bewley*, 68 S.W.3d 613, 619 (Mo.App.2002)). " 'Absent some showing that the evidence inflamed the factfinder or diverted its attention from the issues to be resolved, the receipt of evidence even though irrelevant and immaterial, cannot constitute prejudicial or reversible error.' " *State v. Love*, 134 S.W.3d 719, 725 (Mo.App.2004). The test is whether the possibly improper admission of evidence was outcome determinative. *Id.* The testimony here is not outcome determinative in light of the otherwise sufficient evidence that was introduced which supported a finding that Appellant was guilty of the crimes charged beyond a reasonable doubt. *State v. Carr*, 50 S.W.3d 848, 855 (Mo.App.2001). Plain error review is not warranted in the present matter. The trial court did not err. Point II is denied.

The judgment and sentence of the trial court is affirmed.

BATES, J., and FRANCIS, P.J., concur.